IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-569

 Filed: 19 June 2018

Wake County, No. 16-CV-003099

THE COMMITTEE TO ELECT DAN FOREST, a political committee, Plaintiff,

 v.

EMPLOYEES POLITICAL ACTION COMMITTEE (EMPAC), Defendant.

 Appeal by Plaintiff from order entered 15 February 2017 by Judge Allen

Baddour in Wake County Superior Court. Heard in the Court of Appeals 16 October

2017.

 Walker Law Firm, PLLC, by David “Steven” Walker, for the Plaintiff-Appellant.

 Stevens Martin Vaughn & Tadych, PLLC, by C. Amanda Martin, for the
 Defendant-Appellee.

 DILLON, Judge.

 During the 2012 election cycle, a political advertisement sponsored by the

Employees Political Action Committee (“EMPAC”), the political arm of the State

Employees Association of North Carolina (“SEANC”), ran on television supporting

Linda Coleman, Democratic candidate for Lieutenant Governor. The Committee to

Elect Dan Forest (the “Committee”) commenced this action seeking statutory

damages, contending that EMPAC’s television ad violated the “stand by your ad” law,

which was still in effect during the 2012 campaign cycle.
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

 The trial court granted summary judgment for EMPAC, concluding that the

law was unconstitutional as applied because Mr. Forest could not forecast any

evidence that he suffered any actual damages, presumably because Mr. Forest won

the election anyway. We reverse the trial court’s order granting summary judgment

and remand the matter for further proceedings consistent with this opinion.

 I. Background

 In 1999, the General Assembly enacted a “stand by your ad” law, codified in

N.C. Gen. Stat. § 163-278.39A (hereinafter referred to as the “Disclosure Statute”), to

regulate political advertisements. The Disclosure Statute required in relevant part

that any television ad sponsored by a political action committee contain: (1) a

“disclosure statement" identifying the sponsor of the ad spoken by either the sponsor’s

chief executive officer (“CEO”) or its treasurer; and (2) a “full-screen picture

containing [this] disclosing individual” featured during the disclosure statement.

N.C. Gen. Stat. § 163-278.39A(b)(3) and (6) (2012).1

 The Disclosure Statute creates the right for a candidate to seek statutory

damages against an ad sponsor who runs a non-conforming ad in the candidate’s race.

N.C. Gen. Stat. § 163.278.39A(f).

 1
 The Disclosure Statute was repealed by the General Assembly during its 2013 session,
effective 1 January 2014. See Session Law 2013-381, § 44.1. Neither party made any argument
concerning any effect the repeal may have had on the Committee’s right to bring this action; and,
therefore, we do not consider the issue.

 2
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

 In 2012, North Carolina’s race for Lieutenant Governor featured two

candidates: Dan Forest and Linda Coleman. EMPAC ran a television advertisement

in support of Ms. Coleman during the 2012 election cycle. There is evidence in the

Record that this ad’s disclosure statement violated the Disclosure Statute in two

different ways: (1) the picture of the disclosing individual was not a “full-screen”

picture, but rather was much smaller; and (2) the disclosing individual depicted in

the ad was neither EMPAC’s CEO nor Treasurer, but was rather Dana Cope, the

then-CEO of EMPAC’s affiliate entity, SEANC.

 Mr. Forest’s Committee filed a notice of complaint with the State Board of

Elections (the “SBOE”), whereupon EMPAC pulled the offending ad and ran a new

ad for the remainder of the 2012 election cycle with a disclosure which complied with

the Disclosure Statute. Mr. Forest won the 2012 election for Lieutenant Governor by

a narrow margin of 6,858 votes out of over 4 million votes cast. After the election,

Mr. Forest’s Committee commenced this action seeking statutory damages against

EMPAC for its nonconforming ad supporting Ms. Coleman. The trial court granted

summary judgment to EMPAC. The Committee timely appealed.

 II. Condition Precedent

 Before addressing the arguments of the parties, we address the argument

raised by our dissenting colleague. Specifically, the Disclosure Statute requires that

in order to preserve the right to bring an action for damages, a candidate’s committee

 3
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

must first “complete and file a Notice of Complaint” with the SBOE regarding the

nonconforming ad no later than three days after the election. N.C. Gen. Stat. § 163-

278.39A(f)(1).2 Our dissenting colleague contends that the Record fails to

demonstrate that the Committee filed a notice of complaint with the SBOE by the

Friday following the 2012 election as required by the Disclosure Statute.

 We agree with our dissenting colleague that the requirement to file a notice of

complaint with the SBOE is a statutory “condition precedent” which cannot be

waived; that is, by the terms of the Disclosure Statute, it was a condition precedent

to bringing this matter that Mr. Forest’s Committee first have lodged a complaint

with the SBOE regarding EMPAC’s ad by the Friday following the election. See

Bolick v. American Barmag Corp., 306 N.C. 364, 368-69, 293 S.E.2d 415, 419 (1982).

However, we disagree with our dissenting colleague that the Record lacks sufficient

evidence to create an issue of fact that the Committee satisfied this condition

precedent. Specifically, the Record contains a verified Complaint3 in which the

Committee alleges that it indeed sent a notice of complaint regarding EMPAC’s

nonconforming ad to the SBOE before the election, in late October 2012. Additionally,

the Record contains a copy of this notice of complaint, which was attached as an

 2 The Disclosure Statute also requires a complaining candidate to bring the action within
ninety (90) days of the election. Here, there is no dispute that Mr. Forest’s committee brought action
on 28 December 2012, well within ninety (90) days of the election. That action was dismissed pursuant
to Rule 41; however, this present action was commenced within the time required in Rule 41.
 3 The Committee’s Complaint was verified by Mr. Forest.

 4
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

exhibit to the verified Complaint. This notice of complaint is dated 26 October 2012,

it states that it is being filed that same day, and it too is verified. There was no other

evidence before the trial court at the summary judgment hearing concerning this

issue; EMPAC never raised the issue at summary judgment nor has EMPAC raised

the issue in its brief on appeal. Accordingly, we conclude that the Record shows that

the Committee met its burden at summary judgment of presenting evidence that it

timely filed a notice of complaint with the SBOE.

 We note the dissent’s argument concerning the lack of a file stamp of the SBOE

on the copy of the notice of complaint contained in the Record. We disagree with the

dissent that this lack of a file stamp is fatal to the Committee’s claim. First, the lack

of a file stamp does not bear on our appellate jurisdiction; and therefore, Crowell v.

State, 328 N.C. 563 (1991) and McKinney v. Duncan, ___ N.C. App. ___, ___, 808

S.E.2d 509, 512 (2017), cited in the dissent, are inapposite. It is clear from the Record

that our Court has appellate jurisdiction to consider the trial court’s summary

judgment.

 Secondly, the lack of a file stamp was not fatal to the superior court’s

jurisdiction. Though the Committee bears the burden to show that it filed a notice of

complaint with the SBOE within three days of the 2012 election, we note that

providing a filed stamped copy of the notice is not the only way in which the

Committee may meet its burden. Indeed, even the cases cited by our dissenting

 5
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

colleague, State v. High, 230 N.C. App. 330, 750 S.E.2d 9 (2013) and State v. Moore,

148 N.C. App 568, 559 S.E.2d 565 (2002), suggest that producing a file-stamped copy

is not the only means to meet the burden of showing that a document was filed. These

cases stand for the proposition that a trial court lacks jurisdiction to revoke a criminal

defendant’s probation based on a probation violation report which was not filed prior

to the expiration of the defendant’s probation period. In each case, we held that the

State failed to meet its burden to show that the probation violation report was filed

prior to the expiration of the defendant’s probation period. However, we recognized

that presenting a filed-stamped copy was not the only way which the State could have

met its burden. For instance, in High, we vacated the trial court’s order because “the

[violation] reports were not filed stamped, nor [was] there any other evidence in the

record indicating that the reports were actually filed within the period of probation.”

High, 230 N.C. App. at 336, 750 S.E.2d at 14 (emphasis added). And in Moore, we

vacated the trial court’s order, stating that “[i]n the absence of a filed stamped motion

or any other evidence of the motion’s timely filing[,] the trial court is without

jurisdiction.” Moore, 148 N.C. App. 570, 559 S.E.2d at 566 (emphasis added). But in

the matter before us, though the copy of the notice of complaint in the Record lacks

the file stamp of the SBOE, the Record does contain other evidence showing that the

notice of complaint was timely filed with the SBOE, as outlined above.

 III. Analysis

 6
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

 We now turn to the arguments raised by the parties in their appellate briefs.

In this matter, the trial court granted summary judgment in favor of EMPAC on the

Committee’s claim for statutory damages, concluding that “in the absence of any

forecast of actual demonstrable damages [suffered by Mr. Forest], the statute at issue

is unconstitutional as applied.” In essence, the trial court did not declare the

Disclosure Statute unconstitutional per se, but rather held that Mr. Forest lacked

standing to seek damages under the Statute since he did not suffer any actual

damages, apparently because he won the election.

 On appeal, the Committee contends that the trial court erred in its ruling.

EMPAC argues that the trial court correctly determined that the Disclosure Statute

is unconstitutional as applied and further argues that the Disclosure Statute is

unconstitutional on its face. We review these constitutional arguments de novo.

Forbis v. Neal, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (“The standard of review

for summary judgment is de novo.”); State ex rel. McCrory v. Berger, 368 N.C. 633,

639, 781 S.E.2d 248, 252 (2016) (“We review constitutional questions de novo.”).

 A. Dan Forest’s Committee Has Standing To Seek Damages.

 The trial court essentially concluded that Dan Forest’s Committee lacked

standing to bring this suit based on the absence of any evidence that Mr. Forest

suffered any actual damage. That is, because Mr. Forest won the 2012 election, he

had no standing, in the constitutional sense, to seek statutory damages allowed under

 7
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

the Disclosure Statute. However, based on controlling precedent, it is clear that Mr.

Forest’s Committee does have standing: simply because Mr. Forest won his election

does not mean that he did not suffer an injury sufficient in a constitutional sense to

confer standing.

 The North Carolina Constitution provides in regard to standing as follows:

 All courts shall be open; every person for an injury done
 him in his lands, goods, person, or reputation shall have
 remedy by due course of law; and right and justice shall be
 administered without favor, denial, or delay.

N.C. Const. art. I, § 18 (emphasis added). According to our Supreme Court, “[t]he

North Carolina Constitution confers standing on those who suffer harm[,]” Mangum

v. Raleigh Bd. of Adjustment, 362 N.C. 640, 642, 669 S.E.2d 279, 281 (2008), and that

one must have suffered some “injury in fact” to have standing to sue, Dunn v. Pate,

334 N.C. 115, 119, 431 S.E.2d 178, 181 (1993).

 Our Supreme Court has held in a variety of contexts that a party has standing

to bring suit where a private right has been breached, even where the party has not

suffered actual damages beyond that fact that a breach occurred. The breach itself

is an “injury in fact.” For instance, one has standing to seek nominal damages “where

some legal right has been invaded but no actual loss or substantial injury has been

sustained. Nominal damages are awarded in recognition of the right and of the

technical injury resulting from its violation.” Potts v. Howser, 274 N.C. 49, 61, 161

S.E.2d 737, 747 (1968). A party to a contract has standing to bring suit where the

 8
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

other party has breached the contract, even if no actual damage is shown. Kirby v.

Stokes County, 230 N.C. 619, 627, 55 S.E.2d 322, 327 (1949). An owner of land has

the right to exclusive possession of his property and has standing to bring suit against

anyone who trespasses, even where the owner suffers no actual damage; the owner’s

legal right to exclusive enjoyment of his property has been invaded. Hildebrand v.

Southern Bell, 219 N.C. 402, 408, 14 S.E.2d 252, 257 (1941) (holding that a landowner

“is entitled to be protected as to that which is his without regard to its money value”).

 If EMPAC had slandered Mr. Forest in its political ad, Mr. Forest would have

had standing to seek at least nominal damages for this tort, even though he won the

election. Wolfe v. Montgomery Ward, 211 N.C. 295, 296, 189 S.E.2d 772, 772 (1937)

(holding that a plaintiff who has been slandered has standing to seek nominal

damages even where there is no evidence that he suffered actual damages).

 The private right at issue in the present case was not one that existed at

common law but rather was one created by our General Assembly in the Disclosure

Statute to provide an enforcement mechanism. This private right is a right expressly

conferred by our General Assembly on a candidate to participate in an election where

sponsors of political ads supporting his or her opponent must make themselves known

to the public in their ads. The General Assembly acted within its authority to create

a private right not recognized in the common law:

 The legislative branch of government is without question
 the policy-making agency of our government, and when it

 9
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

 elects to legislate in respect to the subject matter of any
 common law rule, the statute supplants the common law
 rule[.]

Rhyne v. K-Mart Corp., 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004). See also Bumpers

v. Cmty. Bank, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (recognizing our General

Assembly’s authority to prohibit unfair and deceptive trade practices and to create a

private cause of action in favor of a class of individuals to enforce this prohibition).

 Our Court has held that a party has standing to sue for statutory damages

without having to demonstrate actual damages where the statute at issue creates a

private cause of action as a mechanism to enforce the provisions of the statute at

issue. See Addison v. Britt, 83 N.C. App. 418, 421, 350 S.E.2d 158, 160 (1986) (Chief

Judge Eagles, joined by future Chief Justice Parker and future Justice Webb, writing

that “[o]nce a violation of an actionable portion of the [Truth In Lending Act] is

established, the debtor is entitled to recover statutory damages [and that b]ecause

the purpose of that section is to encourage private enforcement of the Act, proof of

actual damages is unnecessary”).

 Concerning the Disclosure Statute at issue here, in 2012, in an opinion joined

by Judge (now Justice) Beasley, our Court recognized that by enacting the Disclosure

Statute in 1999, the General Assembly made the policy decision to create disclosure

rules in political advertising and to enforce those rules through a “private cause of

action,” by which candidates may seek statutory damages when those rules have been

 10
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

broken. Friends of Queen v. Hise, 223 N.C. App. 395, 735 S.E.2d 229 (2012) (footnote

7). The General Assembly expressly created a private right of action for political

candidates and their committees to enforce its policy decision to require that political

television ad sponsors be properly disclosed. It is equally clear that a candidate

suffers an “injury in fact” for a breach, even a technical breach, of this right when an

ad is run in the candidate’s election which runs afoul of the Disclosure Statute. This

“injury in fact” is a breach of a private right similar to a breach of a private right

suffered by a party to a contract who has suffered a breach by the other party to that

contract, or by a landowner whose land has been trespassed upon, or by an individual

who has been slandered. Even though there may not be any other actual damage,

like the loss of an election; the breach of the private right, itself, constitutes an injury

which provides standing to seek recourse.4

 We are not to be concerned with the “wisdom or expediency” of the Disclosure

Statute, but rather we are only concerned with whether the General Assembly had

the “power” to enact the law. In re Denial, 307 N.C. 52, 57, 296 S.E.2d 281, 284 (1982).

We conclude that the General Assembly acted within its authority in 1999 when it

enacted the Disclosure Statute to require that political ads disclose their sponsors

 4 The United States Supreme Court has recently explained that an “injury in fact” need not be
“tangible” for standing to exist. Spokeo v. Robins, 136 S. Ct. 1540, 1549 (2016). Spokeo addressed the
issue of standing in the federal context. Our Supreme Court has instructed that federal cases may be
instructive, though they are not binding, noting that “the nuts and bolts of North Carolina standing
doctrine are not coincident with federal standing doctrine.” Goldston v. State, 361 N.C. 26, 35, 637
S.E.2d 876, 882 (2006).

 11
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

and to provide the committee of a political candidate running for office with a private

cause of action to seek damages against the sponsor of a nonconforming ad, just as

we conclude that the General Assembly acted within its authority in 2013 to repeal

the law.

 B. Dan Forest’s Committee May Seek Statutory Damages Without Showing
 Evidence of Actual Damage.

 Having concluded that Mr. Forest’s Committee has standing to bring this

action, we now consider whether the Committee may recover the statutory damages

provided under the Disclosure Statute without presenting any evidence that Mr.

Forest suffered any actual monetary damages.

 The Disclosure Statute provides that a candidate receiving a favorable verdict

is entitled to statutory damages equal to the “total dollar amount” spent by the ad

sponsor to air the nonconforming ad. N.C. Gen. Stat. § 163-278.39A(f)(2). In this

case, while the exact amount EMPAC spent on the nonconforming ad has yet to be

determined, EMPAC argues that any amount of statutory damages would be an

unconstitutional “windfall” to Mr. Forest’s Committee, since Mr. Forest won the

election. The Committee, though, argues that the statutory damages imposed by the

Disclosure Statute is not unconstitutional “as applied” here even if the Committee

fails to present evidence of actual quantifiable damages.

 We conclude that the General Assembly has the authority to provide for

statutory damages and, therefore, that the Committee may seek statutory damages.

 12
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

Specifically, our Court has recognized this authority in the context of the Disclosure

Statute. See Friends of Queen, supra. There are other contexts where an award of

statutory damages, without a showing of actual damages, has been sustained. See,

e.g., Simmons v. Kross Lieberman, 228 N.C. App. 425, 431, 746 S.E.2d 311, 315 (2013)

(holding that a party may recover a civil penalty as provided by statute without

showing actual damages for violations of our Debt Collection Act under Chapter 58);

State v. Beckham, 148 N.C. App. 282, 558 S.E.2d 255 (2002) (holding that an award

of statutory damages of $150 under N.C. Gen. Stat. § 1-538.2, where actual damages

shown was less, was civil in nature and appropriate); see also N.C. Gen. Stat. § 25-9-

625(e) (providing that debtors may recover $500 per violation).5

 Furthermore, statutory damages which may exceed a plaintiff’s actual

damages are not unconstitutional unless the statutory damage award “prescribed is

so severe and oppressive as to be wholly disproportionate to the offense and obviously

unreasonable.” St. Louis v. Williams, 251 U.S. 63, 66-67 (1919). Our Supreme Court

has recognized this principle. N.C. School Board v. Moore, 359 N.C. 474, 496-97, 614

S.E.2d 504, 517-18 (2004) (recognizing the principle that “rough justice, not absolute

 5 In the federal context, there are a number of situations where a plaintiff may recover
statutory damage relief without any showing of actual damages: the Copyright Act (17 U.S.C. § 504(c))
which allows a plaintiff to recover between $750 and $30,000 for each act of infringement instead of
actual damages; the Cable Piracy Act (47 U.S.C. § 605(e)) which allows a plaintiff to recover between
$1,000 and $10,000 in lieu of actual damages; the Anti-Cybersquatting Consumer Protection Act (15
U.S.C. § 1125(d)) which allows a plaintiff to recover between $1,000 and $100,000 from any person
who registers in bad faith a domain name that is confusingly similar to the plaintiff’s distinctive mark;
and the Fair Debt Collection Practices Act of 1978 (15 U.S.C. § 1692k(a) which allows plaintiffs to
recover from debt collectors as much as $1,000 per violation of the Act’s requirements.

 13
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

precision, was sufficient in evaluating the amount of [statutory] damages so long as

the amount of the penalty was not severely disproportionate [to the actual

damages]”).

 Therefore, we conclude that the Committee need not put forth evidence of

actual damages in order to seek statutory damages. Such is not required in other

contexts where statutory damages are allowed. However, we recognize that there

may be situations where an award of statutory damages might be unconstitutionally

excessive and would need to be reduced. For example, if a political action committee

spent $1 million running an ad which did not feature the picture of the disclosing

individual until a second after the disclosure statement commenced (where the

Disclosure Statute requires the picture be displayed “throughout the duration of the

disclosure statement”), an award of $1 million might be deemed unconstitutionally

excessive. Such an award may be viewed as “oppressive” and “wholly

disproportionate” to such a minor technical violation, and it might be appropriate to

reduce such award.

 But, here, it could be argued that EMPAC’s violation was more substantial.

Specifically, it is possible that having Dana Cope, a then-popular executive director

of EMPAC’s affiliate entity, SEANC, shown as the disclosing individual may have

given the ad a level of gravitas that it would not have enjoyed if an unknown officer

of EMPAC had been depicted. We conclude, however, that it is premature to decide

 14
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

whether the statutory damages allowed under the Disclosure Statute would be

unconstitutionally excessive in this case, as the amount of statutory damages, if any,

has yet to be determined.

 C. The Disclosure Statute is Facially Constitutional.
 (First Amendment Challenge)

 EMPAC argues, as an alternate legal ground to support the trial court’s

summary judgment, that the Disclosure Statute is unconstitutional on its face.

Specifically, EMPAC contends that the Disclosure Statute constitutes a content-

based restriction on speech, in violation of the First Amendment, because it requires

that political ads contain a disclosure, while not requiring other forms of

advertisement to contain a disclosure. We must disagree. Specifically, the United

States Supreme Court has expressly held that a law requiring a disclaimer or a

disclosure identifying the sponsor of a political ad is not a content-based restriction

on speech requiring strict scrutiny review. Citizens United v. FEC, 558 U.S. 310, 366

(2010) (“Disclaimer and disclosure requirements . . . ‘do not prevent anyone from

speaking.’”) (quoting McConnell v. FEC, 540 U.S. 93, 201 (2003)). Rather, the Court

held that such laws limit only the manner of speech and are, therefore, subject only

to “exacting scrutiny” review. Citizens United, 558 U.S. at 366. And we are bound

by that determination.

 To survive “exacting scrutiny” review, which is generally considered to be

synonymous with “intermediate scrutiny” review, the law “need not [provide] the

 15
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

least restrictive or least intrusive means” of reaching a government objective. Ward

v. Rock Against Racism, 491 U.S. 781, 784 (1989). Rather, there need only be a

“substantial relation” between the law and a “sufficiently important” governmental

interest. Citizens United, 558 U.S. at 366-67.

 In Citizens United, the Court found that a law requiring disclosures in political

advertising can survive “exacting scrutiny” review “based on a governmental interest

in ‘provid[ing] the electorate with information’ about the sources of election-related

spending,” Id. at 367, and that such disclosures “permit[] citizens and shareholders

to react to the speech of corporate entities in a proper way, [which] enables the

electorate to make informed decisions and give proper weight to different speakers

and messages,” Id. at 371.

 The Disclosure Statute here, requiring a sponsor’s CEO or treasurer read a

short disclaimer while his or her picture is displayed, is similar to and not any more

onerous than the statute sustained by the United States Supreme Court in Citizens

United, a statute which required that political ads contain a disclosure statement

which:

 [M]ust be made in a “clearly spoken manner,” and
 displayed on the screen in a “clearly readable manner” for
 at least four seconds. It must state that the communication
 “is not authorized by any candidate or candidate's
 committee”; it must also display the name and address (or
 Web site address) of the person or group that funded the
 advertisement.

 16
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

Id. at 366. EMPAC’s argument concerning the facial validity of the Disclosure

Statute is, therefore, overruled.

 IV. Conclusion

 This matter involves the partisan political process. And there is an element of

political irony; a Republican invoking a law passed by a Democratic-controlled

General Assembly and later repealed by a Republican-controlled General Assembly.

However, our job is not to consider the politics of the parties involved. Rather, our

job is simply to apply the law, irrespective of politics.

 Applying the law, we must conclude that our General Assembly acted within

its authority in 1999 when it enacted the Disclosure Statute, creating a private cause

of action in favor of political candidates against the sponsors of political ads who fail

to properly disclose their identity, just as the General Assembly acted within its

authority when it took away this statutory right in 2013. Therefore, we must

conclude that the trial court erred in granting summary judgment in favor of EMPAC.

We reverse the order of the trial court and remand the matter for further proceedings

consistent with this opinion. In so ordering, we note that whether the Disclosure

Statute is unconstitutional as applied because the amount of statutory damages

allowed thereunder is unconstitutionally excessive is not before us since the amount

of statutory damages has yet to be determined in this case.

 REVERSED AND REMANDED.

 17
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 Opinion of the Court

Judge CALABRIA concurs.

Chief Judge McGEE dissents.

 18
 No. COA17-569 – Committee To Elect Dan Forest v. EMPAC

 McGEE, Chief Judge, dissenting.

 Because I believe this Court lacks subject matter jurisdiction over the appeal,

I respectfully dissent. This Court lacks jurisdiction to consider Plaintiff’s appeal for

two reasons: (1) Plaintiff has failed to demonstrate that it had standing to initiate

this action, and (2) Plaintiff has failed to prove that it met a condition precedent

required for the trial court to obtain subject matter jurisdiction.

 I. Standing

 Plaintiff failed in its burden of demonstrating that it had standing to bring the

present action. Because I believe the necessary elements of standing, as set forth in

the appellate opinions of this State, are based on rights and protections guaranteed

by the North Carolina Constitution, I do not believe the General Assembly is

empowered to confer standing on plaintiffs that have not alleged any actual harm.

 The majority opinion repeatedly states its assumption that the trial court

based its ruling on a determination that “because Dan Forest won his election . . . he

did not suffer an injury sufficient in a constitutional sense to confer standing.”

However, the trial court did not reference the outcome of the election anywhere in its

order – it simply stated that “Plaintiff has failed to allege any forecast of damage

other than speculative damage.” More importantly, the reasoning of the trial court

is not relevant to our standing review. My analysis is based solely upon the

allegations in Plaintiff’s 9 March 2016 Complaint (“Plaintiff’s Complaint”).
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

 “No person shall be . . . in any manner deprived of his . . . property, but by the

law of the land.” N.C. Const. art. I, § 19. “[U]nder the law of the land clause of the

State Constitution a judgment of a court cannot bind a person unless he is brought

before the court in some way sanctioned by law[.]” Eason v. Spence, 232 N.C. 579,

586, 61 S.E.2d 717, 722 (1950) (citations omitted). “All courts shall be open; every

person for an injury done him in his lands, goods, person, or reputation shall have

remedy by due course of law[.]” N.C. Const. art. I, § 18. “As a general matter, the

North Carolina Constitution confers standing on those who suffer harm[.]”

Willowmere Cmty. Ass’n v. City of Charlotte, __ N.C. __, __, 809 S.E.2d 558, 561 (2018)

(quoting art. I, § 18 and Mangum v. Raleigh Bd. of Adjust., 362 N.C. 640, 642, 669

S.E.2d 279, 281 (2008)) (emphasis added). Therefore, the North Carolina

Constitution does not confer standing on those who have not suffered harm. Id.

 In order to establish standing to bring this action based on violations of N.C.

Gen. Stat. § 163-278.39A, Plaintiff was required to meet two separate burdens: (1)

prove that it was a party authorized to bring the action pursuant to the requirements

of the statute itself, see, e.g., Applewood Props., LLC v. New S. Props., LLC, 366 N.C.

518, 522–24, 742 S.E.2d 776, 779-80 (2013), and (2) prove that it met the general

constitutional standing requirements as determined by our appellate courts. See,

e.g., Carcano v. JBSS, LLC, 200 N.C. App. 162, 175, 684 S.E.2d 41, 52 (2009); Coker

v. DaimlerChrysler Corp., 172 N.C. App. 386, 390–91, 617 S.E.2d 306, 310 (2005),

 2
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

aff’d per curiam, 360 N.C. 398, 627 S.E.2d 461 (2006). “Since standing is a

jurisdictional requirement, the party seeking to bring [its] claim before the court must

include allegations which demonstrate why [it] has standing in the particular case[.]”

Cherry v. Wiesner, __ N.C. App. __, __, 781 S.E.2d 871, 877, disc. review denied, 369

N.C. 33, 792 S.E.2d 779 (2016) (citations omitted). The allegations in Plaintiff’s

complaint were sufficient to meet Plaintiff’s first burden, but insufficient to meet its

second.

 North Carolina courts are not constitutionally bound by the standing

jurisprudence established by the United States Supreme Court. See, e.g., Cedar

Greene, LLC v. City of Charlotte, 222 N.C. App. 1, 17, 731 S.E.2d 193, 204–05 (2012),

rev’d, 366 N.C. 504, 739 S.E.2d 553 (2013) (adopting Court of Appeals dissent in

appeal from declaratory action challenging constitutionality of a statute); but see

Dunn v. Pate, 334 N.C. 115, 119, 431 S.E.2d 178, 181 (1993) (citation omitted) (Our

Supreme Court, in determining the issue of standing in a constitutional challenge to

a statute, stated: “The [Court of Appeals] correctly stated that the petitioner ‘must

allege she has sustained an “injury in fact” as a direct result of the statute to have

standing.’”). However, since at least the 1960s, our courts, both trial and appellate,

have applied requirements established by the United States Supreme Court to the

standing jurisprudence of this State. See, e.g., id.; River Birch Assocs. v. City of

 3
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

Raleigh, 326 N.C. 100, 129, 388 S.E.2d 538, 555 (1990); Stanley v. Dept. Conservation

& Development, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973).

 When this Court or our Supreme Court adopts a standard from another

jurisdiction and applies that standard in order to decide an issue before it, that

standard becomes part of the holding, and part of the law of this State. Therefore,

though standing requirements set by the United States Supreme Court are not

inherently binding on this Court, they become binding once adopted and applied by

our appellate courts in order to decide an issue. Both this Court and our Supreme

Court have adopted and applied federal standing requirements for decades, and this

Court is bound by those adopted standards as much as it is bound by the common law

standards that developed independently in this State.6

 When discussing the underlying requirements for demonstrating standing in

regular civil actions, this Court has repeatedly held that

 [t]he irreducible constitutional minimum of standing [is]:
 (1) “injury in fact” – an invasion of a legally protected
 interest that is (a) concrete and particularized and (b)
 actual or imminent, not conjectural or hypothetical; (2) the
 injury is fairly traceable to the challenged action of the
 defendant; and (3) it is likely, as opposed to merely
 speculative, that the injury will be redressed by a favorable
 decision.

 6 I refer only to standards found in opinions with precedential value, and to those standards
that constitute holdings in that the application of the standard was “necessary to the decision.” See
Trustees of Rowan Tech. v. Hammond Assoc., 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) (citations
omitted) (distinguishing holdings from obiter dictum by stating: “Language in an opinion not necessary
to the decision is obiter dictum and later decisions are not bound thereby.”).

 4
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

Teague v. Bayer AG, 195 N.C. App. 18, 22, 671 S.E.2d 550, 554 (2009) (citations and

quotation marks omitted). Because federal constitutional standards do not dictate

standing requirements in North Carolina, the “irreducible constitutional minimum”

discussed in Teague and other opinions must logically refer to the minimum

requirements of the North Carolina Constitution. See N.C. Const. art. I, § 18;

Willowmere, __ N.C. at __, 809 S.E.2d at 561. Our Supreme Court has recognized

“injury in fact” as a required element of standing in opinions filed both prior and

subsequent to Cedar Greene. See Hart v. State, 368 N.C. 122, 140, 774 S.E.2d 281,

293–94 (2015); Empire Power Co. v. N.C. Dept. of E.H.N.R., 337 N.C. 569, 590, 447

S.E.2d 768, 780–81 (1994).

 A recent United States Supreme Court opinion, Spokeo, Inc. v. Robins, __ U.S.

__, 194 L. Ed. 2d 635 (2016), addressed the issue presently before us – whether

standing can be created by statute for plaintiffs that cannot meet the general

constitutional standing requirements. In Spokeo, the Court held that the plaintiff’s

burden to prove injury-in-fact cannot be abolished by statute. Id. at __, 194 L. Ed. 2d

at 646 (citations omitted). The Court held: “Injury in fact is a constitutional

requirement, and ‘[i]t is settled that Congress cannot erase Article III’s standing

requirements by statutorily granting the right to sue to a plaintiff who would not

otherwise have standing.’” Id. at __, 194 L. Ed. 2d at 643-44. The injury-in-fact

standard applied in Spokeo is the same that this Court applies: “‘To establish injury

 5
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

in fact, a plaintiff must show that he or she suffered ‘an invasion of a legally protected

interest’ that is ‘concrete and particularized’ and ‘actual or imminent, not conjectural

or hypothetical.’” Spokeo, __ U.S. at __, 194 L. Ed. 2d at 644 (citation omitted). “For

an injury to be ‘particularized,’ it ‘must affect the plaintiff in a personal and

individual way.’” Id. (citations omitted). “Particularization is necessary to establish

injury in fact, but it is not sufficient. An injury in fact must also be ‘concrete.’” Id.

“A ‘concrete’ injury must be ‘de facto’; that is, it must actually exist. When we have

used the adjective ‘concrete,’ we have meant to convey the usual meaning of the term

– ‘real,’ and not ‘abstract.’” Id. at __, 194 L. Ed. 2d at 644-45 (citations omitted);

compare Teague, 195 N.C. App. at 22, 671 S.E.2d at 554. The “de facto” requirement

is also recognized by this Court. See Coker, 172 N.C. App. at 391–92, 617 S.E.2d at

310 (citations omitted) (emphasis removed) (defining “injury in fact” as an injury that

is “concrete and particularized and . . . actual or imminent, not conjectural or

hypothetical[,]” “distinct and palpable” and not “abstract”).

 In Spokeo, the Court recognized that “the violation of a procedural right

granted by statute can be sufficient in some circumstances to constitute injury in

fact[,]” Spokeo, __ U.S. at __, 194 L. Ed. 2d at 646 (emphasis added), but that “does

not mean that a plaintiff automatically satisfies the injury-in-fact requirement

whenever a statute grants a person a statutory right and purports to authorize that

person to sue to vindicate that right.” Id. at __, 194 L. Ed. 2d at 645. The Court held

 6
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

that because the Ninth Circuit failed to consider whether violation of the specific

procedures alleged in Robins’ complaint constituted a sufficiently concrete harm,

remand was required.

 On the one hand, Congress plainly sought to curb the
 dissemination of false information by adopting procedures
 designed to decrease that risk. On the other hand, Robins
 cannot satisfy the demands of Article III by alleging a bare
 procedural violation [because] violation of . . . FCRA’s
 procedural requirements may result in no harm.

Id. at __, 194 L. Ed. 2d at 646 (emphasis added). The Court held that the relevant

analysis was “whether the particular procedural violations alleged in this case entail

a degree of risk sufficient to meet the concreteness requirement.” Id. (emphasis added).

Stated differently:

 [A]n alleged procedural violation can by itself manifest
 concrete injury where Congress conferred the procedural
 right to protect a plaintiff’s concrete interests and where
 the procedural violation presents a “risk of real harm” to
 that concrete interest. But even where Congress has
 accorded procedural rights to protect a concrete interest, a
 plaintiff may fail to demonstrate concrete injury where
 violation of the procedure at issue presents no material risk
 of harm to that underlying interest.

Strubel v. Comenity Bank, 842 F.3d 181, 190 (2d Cir. 2016) (citing and paraphrasing

Spokeo). In the wake of Spokeo, multiple federal jurisdictions have held that minor

or technical violations of statutes do not satisfy the injury-in-fact requirement. See,

e.g., Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 346 (4th Cir. 2017) (“As Spokeo

demonstrated, a statutory violation absent a concrete and adverse effect does not

 7
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

confer standing.”); Kleg v. SP Plus Corp., 2018 WL 1807012 (N.D. Ga. Mar. 5, 2018)

(including thorough review of federal district and circuit courts that have found no

standing for non-injurious statutory violations). I believe the North Carolina

Constitution requires the same level of particularization and concreteness with

regard to statutory violations.7 See, e.g., Empire Power, 337 N.C. at 590, 447 S.E.2d

at 780–81 (citation omitted) (emphasis added) (“the ‘procedural injury’ implicit in the

failure of an agency to prepare an environmental impact statement was itself a

sufficient ‘injury in fact’ to support standing as an ‘aggrieved party’ under former

N.C.G.S. § 150A–43, as long as such injury was alleged by a plaintiff having sufficient

geographical nexus to the site of the challenged project that he might be expected to

suffer whatever environmental consequences the project might have.”).

 In the present case, Plaintiff argues, and the majority opinion agrees, that

allegation of a “bare procedural violation” of N.C.G.S. § 163-278.39A was sufficient to

confer standing. Plaintiff contends in its reply brief: “In light of [N.C.G.S. § 163-

278.39A], the General Assembly has declared that a candidate has been injured when

an opposing organization fails to follow advertising disclosure laws. Thus, there is

injury in fact [in this case.]” Plaintiff further contends that because the General

Assembly created a private cause of action as the enforcement mechanism for

N.C.G.S. § 163-278.39A, the General Assembly eliminated the need to show “actual

 7 In contrast, the majority opinion holds that “even a technical breach” of N.C.G.S. § 163-
278.39A constitutes a per se injury in fact.

 8
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

demonstrable damages:” “[W]hen [the General Assembly] created [N.C.G.S.] § 163-

278.39A (2011), by modifying the common law requirement that actual damages must

be demonstrable, it provided a different way to calculate otherwise incalculable actual

damages.” To the extent, if any, that Plaintiff is using “damages” to mean “injury,”

conflating these terms is incorrect. “[T]he term ‘wrong’ has a legal signification

distinct from ‘damage,’ and is synonymous with ‘injuria’ – signifying a legal injury –

hence the maxim damnum absque injuria, which ‘is used to designate damage which

is not occasioned by anything which the law esteems an injury.’” Thomason v. R. R.,

142 N.C. 318, 330, 55 S.E. 205, 209–10 (1906) (citations omitted). It was evidence of

injury, not damages, that Plaintiff was required to properly plead in order to confer

standing.

 The General Assembly unquestionably has the authority to supplant common

law through legislation. However, I do not agree that this State’s standing

requirements are susceptible to abrogation through legislative enactments – they are

the minimum constitutional requirements a plaintiff must satisfy in order to force a

defendant into court. Mangum, 362 N.C. at 642, 669 S.E.2d at 281-82; see also N.C.

Const. art. I, §§ 18 and 19; N.C. Const. art. IV, § 1 (“The General Assembly shall have

no power to deprive the judicial department of any power or jurisdiction that

rightfully pertains to it as a co-ordinate department of the government[.]”); City of

Asheville v. State of N.C., 369 N.C. 80, 88, 794 S.E.2d 759, 766 (2016) (citations and

 9
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

quotation marks omitted) (“[i]f there is a conflict between a statute and the

Constitution, this Court must determine the rights and liabilities or duties of the

litigants before it in accordance with the Constitution”).

 I cannot locate any other enactment by the General Assembly that has created

a private right of action conferring standing on a plaintiff without requiring any

showing of a particularized and concrete injury proximately caused by an act of the

defendant. For example, N.C. Gen. Stat. § 75-16 (2017) of our Unfair and Deceptive

Practices Act specifically requires an allegation of injury, and this Court has held that

a plaintiff must allege facts in support of both the standing requirements created by

the legislation, and the constitutional requirements for standing. Coker, 172 N.C.

App. at 391, 401, 617 S.E.2d at 310, 316, aff’d per curiam, 360 N.C. 398, 627 S.E.2d

461.

 In Friends of Queen, this Court recognized the peculiarity of the use of a private

cause of action as an enforcement mechanism for violations of N.C.G.S. § 163-

278.39A:

 The enforcement mechanism chosen by our legislature is
 unique in the world of election law. Many other
 jurisdictions have analogous disclosure laws. However,
 after diligent searching, it appears that North Carolina has
 the only statute that provides candidates with a private
 cause of action against their opponents for advertising
 disclosure violations, rather than enforcement through
 government-enforced criminal or civil penalties.

 10
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

Friends of Joe Sam Queen v. Ralph Hise for N.C. Senate, 223 N.C. App. 395, 403 n.7,

735 S.E.2d 229, 235 n.7 (twelve citations to statutes from different jurisdictions

omitted) (emphasis added). It is this unprecedented use in N.C.G.S. § 163-278.39A

of a private cause of action to enforce what was essentially a public right to

information that is responsible for the unique standing issue now before us. As

suggested by Friends of Queen, 223 N.C. App. at 403 n.7, 735 S.E.2d at 235 n.7, it is

the State, not private entities, that has the superior interest in enforcing public

rights, and the inherent standing to do so.

 I do not agree that N.C.G.S. § 163-278.39A was enacted to create or enforce “a

political candidate’s right to participate in a campaign where sponsors of political ads

supporting his or her opponent must make themselves known to the public in their

ads.” The majority opinion suggests that N.C.G.S. § 163-278.39A was intended to

create a private, rather than public, right. If this were true, it would represent a

complete break with the traditional state interests motivating the enactment of

disclosure statutes, and would raise concerning constitutional questions. Political

disclosure laws have been enacted, and constitutionally justified, as a means to

enforce the public’s right to access relevant information concerning political

candidates. In fact, it is this governmental interest in ensuring an informed

electorate that serves to provide constitutional justification for the coincident

invasion of First Amendment rights associated with political disclosure statutes:

 11
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

 In this case, the state interest at stake is that of
 “provid[ing] the electorate with information as to where
 political campaign money comes from and how it is spent.”
 Buckley, 424 U.S. at 66, 96 S.Ct. 612 (internal quotation
 marks omitted). This “informational interest” is
 sufficiently important to support disclosure requirements.
 In Buckley, the Court recognized that campaign finance
 disclosure was a critical tool for maintaining transparency
 in the political marketplace: “In a republic where the
 people are sovereign, the ability of the citizenry to make
 informed choices among candidates for office is essential,
 for the identities of those who are elected will inevitably
 shape the course that we follow as a nation.” Disclosure
 requirements advance the public’s interest in information
 by “allow[ing] voters to place each candidate in the political
 spectrum more precisely than is often possible solely on the
 basis of party labels and campaign speeches.” By revealing
 “the sources of a candidate’s financial support,” disclosure
 laws “alert the voter to the interests to which a candidate
 is most likely to be responsive and thus facilitate
 predictions of future performance in office.”

Ctr. for Individual Freedom v. Madigan, 697 F.3d 464, 477–78 (7th Cir. 2012)

(citations omitted); see also State v. Wright, 206 N.C. App. 239, 243, 696 S.E.2d 832,

836 (2010) (“the whole purpose of the campaign finance laws is to make the

information available to the public at all times for voters’ review”). It is at least in

question whether the majority opinion’s stated interpretation of N.C.G.S. § 163-

278.39A – that it created a private right for the political candidates themselves

instead of a public right for the electorate – would serve to justify the countervailing

First Amendment rights involved. See, generally, Davis v. FEC, 554 U.S. 724, 744,

171 L. Ed. 2d 737, 754-55 (2008). Although N.C.G.S. § 163-278.39A created a private

 12
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

cause of action, that cause of action was created to protect a public, not private, right

– the right to insure an informed electorate. Under federal standing jurisprudence,

“Congress cannot authorize private plaintiffs to enforce public rights in their own

names, absent some showing that the plaintiff has suffered a concrete harm

particular to him.” Spokeo, __ U.S. at __, 194 L. Ed. 2d at 650 (Justice Thomas

concurring).8 I would hold that no less requirement should be applied here.

 The majority opinion holds: “It is . . . clear that a candidate suffers an ‘injury

in fact’ for a breach, even a technical breach, . . . when an ad is run which runs afoul

of the Disclosure Statute.” Though “intangible” injuries, such as violations of

fundamental rights, can confer standing to pursue a statutorily created cause of

action, it is only those intangible injuries that meet minimum constitutional

requirements that can do so. Spokeo, __ U.S. at __, 194 L. Ed. 2d at 646. Neither

Plaintiff, nor the majority opinion, indicates which allegations in Plaintiff’s complaint

meet the minimum requirements set forth in Hart, 368 N.C. at 140, 774 S.E.2d at

293–94, Teague, 195 N.C. App. at 22, 671 S.E.2d at 554, or any other appellate opinion

of this State. I can identify no allegation of any harm in Plaintiff’s complaint that is

“de facto,” or otherwise “real, and not abstract,” “conjectural or hypothetical.” Coker,

172 N.C. App. at 391–92, 617 S.E.2d at 310. Nor can I identify how the alleged

 8 For an in depth review of the differing standing requirements attached to “private” and
“public” rights, see Spokeo, __ U.S. at __, 194 L. Ed. 2d at 647-50.

 13
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

violations constitute a particularized harm that “‘affect[s] [P]laintiff in a personal and

individual way.’” Spokeo, __ U.S. at __, 194 L. Ed. 2d at 644 (citation omitted).

 There is nothing inherently injurious to Plaintiff that flows from Defendant’s

alleged violations of N.C.G.S. § 163-278.39A. Plaintiff’s two allegations are that

Defendant failed to include in its television advertisement “an unobscured, full-

screen picture containing the disclosing individual, either in photographic form or

through the actual appearance of the disclosing individual on camera, . . . featured

throughout the duration of the disclosure statement[,]” and that the disclosure

statement was not “spoken by the chief executive officer or treasurer of the political

action committee[.]” Plaintiff’s own argument on appeal illustrates the “abstract or

conjectural or hypothetical” nature of any potential injury suffered by Plaintiff.

Plaintiff states: “It is difficult to prove whether the offending advertisements closed

the electoral gap and led to [Plaintiff] being required to hire a legal team to monitor

provisional vote counting and prepare for the possibility of a recount.” Whether the

advertisements were in some general sense effective in “closing the electoral gap” is,

of course, irrelevant. In order to make an argument of relevance, Plaintiff would have

had to allege that the manner in which the alleged violations of N.C.G.S. § 163-

278.39A altered the television advertisement negatively impacted Plaintiff’s campaign

in some tangible manner, or otherwise resulted in actual injury. However, Plaintiff’s

complaint failed to allege even this hypothetical injury.

 14
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

 The majority opinion cites Kirby v. Board of Education, 230 N.C. 619, 55 S.E.2d

322 (1949), Hildebrand v. Telegraph Co., 219 N.C. 402, 14 S.E.2d 252 (1941), and

Wolfe v. Montgomery Ward & Co., 211 N.C. 295, 189 S.E. 772 (1937), for the

proposition that violations of N.C.G.S. § 163-278.39A(3) and (6) constituted injury

sufficient to confer standing, because “a party has standing to bring suit where a

private right has been breached, even where the party has not suffered actual

damages beyond the fact that a breach occurred.” As argued above, I believe N.C.G.S.

§ 163-278.39A(3) and (6) created public rights, not any private rights in Plaintiff (or

in Mr. Forest). Further, damages and injury are not synonymous, and the well-

established common law causes of action at issue in Kirby, Hildebrand, and Wolfe –

breach of contract, trespass, and slander – are in no manner similar to violations of

the (then) newly created statutory provisions of N.C.G.S. § 163-278.39A. In certain

instances, an allegation that a defendant committed a particular tort is itself an

allegation of an injury-in-fact. Spokeo, __ U.S. at __, 194 L. Ed. 2d at 647 (Justice

Thomas concurring) (citations omitted) (“‘Private rights’ have traditionally included

rights of personal security (including security of reputation), property rights, and

contract rights. In a suit for the violation of a private right, courts historically

presumed that the plaintiff suffered a de facto injury merely from having his personal,

legal rights invaded. Thus, when one man placed his foot on another’s property, the

property owner needed to show nothing more to establish a traditional case or

 15
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

controversy. Many traditional remedies for private-rights causes of action – such as

for trespass, infringement of intellectual property, and unjust enrichment – are not

contingent on a plaintiff’s allegation of damages beyond the violation of his private

legal right.”). Breach of contract, trespass, and slander also fall into this category,

and when a plaintiff proves the tort but fails to prove actual damages, nominal

damages are awarded to acknowledge the injury committed. Hildebrand, 219 N.C.

at 408, 14 S.E.2d at 257 (emphasis added) (“The fact that the injury may be trivial,

though material in determining the amount of the owner’s damages, does not affect

his constitutional rights or the principle of law involved. He is entitled to be protected

as to that which is his without regard to its money value.”). This difference between

traditional common law private causes of action, and causes of action created by

statute, has long been recognized and, unlike breach of contract, trespass, or slander,

violations of N.C.G.S. § 163-278.39A(3) and (6) could not have resulted in per se injury

to Plaintiff.

 The majority opinion cites Addison v. Britt, 83 N.C. App. 418, 350 S.E.2d 158

(1986), involving the federal Truth in Lending Act. Addison was decided long before

Spokeo and, as cited above, multiple federal courts have since applied Spokeo to find

lack of standing on similar facts. Further, this Court expressly declined to address

the issue for which the majority opinion cites Addison:

 Whether liability attaches to creditors for technical or
 minor violations of the Act is subject to some dispute

 16
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

 among the various jurisdictions. We need not decide the
 question of whether “technical” violations of the actionable
 provisions of section 1638 give rise to creditor liability
 since, in any event, the particular violation we address
 here is not technical in nature.

Id. at 420, 350 S.E.2d at 159 (citation omitted) (emphasis added).

 I disagree with the majority opinion’s contention that footnote 7 of Friends of

Queen supports a finding of standing in the present case. This footnote more

accurately recognizes the novelty of the private cause of action enforcement

mechanism included in N.C.G.S. § 163-278.39A(f), and thereby anticipated the

standing issue now before us. Finally, Plaintiff fails to make any argument that “it

is likely, as opposed to merely speculative, that the [alleged] injury will be redressed

by a favorable decision.” Teague, 195 N.C. App. at 22, 671 S.E.2d at 554. I cannot

identify an injury, much less how a monetary award could redress any “injury”

resulting from violations of N.C.G.S. § 163-278.39A(3) or (6). Because I would hold

that Plaintiff has failed in its burden of proving standing, I would dismiss Plaintiff’s

appeal. Stanley, 284 N.C. at 28–29, 199 S.E.2d at 650.

 II. Condition Precedent

 Plaintiff filed the record in this appeal on 2 June 2017. In Plaintiff’s

Complaint, Plaintiff alleged it had “alerted the State Board of Election[s] [(the

‘Board’)] of [] Defendant’s violation” of N.C.G.S. § 163-278.39A(b)(6),9 and stated that

 9 The Notice of Complaint references both N.C.G.S. § 163-278.39A(b)(3) and (6), but only
alleges a violation of N.C.G.S. § 163-278.39A(b)(6).

 17
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

“[t]he filing of the Notice of Complaint on October 25, 2012 has preserved [] Plaintiff’s

right to bring this action[.]” The Notice of Complaint was signed and notarized on 26

October 2012, but it does not include a file stamp or any other method by which this

Court can determine when or if it was actually filed with the Board. We allowed

amendment of the record on 23 March 2018, but the copy of the Notice of Complaint

included therein was identical to the copy already in the record – lacking a file stamp.

 N.C. Gen. Stat. § 163-278.39A(f)(1), which created the cause of action, stated:

 Any plaintiff candidate in a statewide race in an action
 under this section shall complete and file a Notice of
 Complaint Regarding Failure to Disclose on Television or
 Radio Campaign Advertising with the State Board of
 Elections after the airing of the advertisement but no later
 than the first Friday after the Tuesday on which the election
 occurred. . . . . The timely filing of this notice preserves the
 candidate’s right to bring an action in superior court any
 time within 90 days after the election.

Id. (emphasis added); see also Friends of Queen, 223 N.C. App. at 400 n. 4, 735 S.E.2d

at 233 n. 4 (“The plaintiff must . . . file the necessary notices under § 163–278.39A(f)

to preserve the right to bring the action.”). The majority opinion agrees that the filing

requirement in N.C.G.S. § 163-278.39A(f)(1) constituted a statute of repose, or a

jurisdictional condition precedent to the initiation of the present action.

 Our Supreme Court has discussed the difference between statutes of

limitations – enforcement of which may be waived – and statutes of repose – which

are unwaivable conditions precedent to the right to initiate an action:

 18
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

 Generally, a statute of limitations has been recognized as
 a procedural bar to a plaintiff’s action, which “does not
 begin to run until after the cause of action has accrued and
 the plaintiff has a right to maintain a suit.” It also has
 been long recognized that certain time limitations may
 operate, not as procedural bars after an action has accrued,
 but as conditions precedent to the action itself.

Bolick v. American Barmag Corp., 306 N.C. 364, 368–69, 293 S.E.2d 415, 419 (1982)

(citations omitted). Therefore, “the commencement of the action within the time [the

statute] fixes is an indispensable condition of the liability and of the action which it

permits. The time element is an inherent element of the right so created, and the

limitation of the remedy is a limitation of the right.” Id. (citation and quotation marks

omitted).

 Compliance with the “Notice of Complaint” filing requirement was

jurisdictional and unwaivable, and non-compliance would have served to prevent the

trial court from exercising jurisdiction. In re T.R.P., 360 N.C. 588, 590-91, 636 S.E.2d

787, 790 (2006). Absent subject matter jurisdiction at the trail court level, this Court

is without jurisdiction to consider the matter on appeal. State v. Earley, 24 N.C. App.

387, 389, 210 S.E.2d 541, 543 (1975) (“[T]he jurisdiction of the appellate courts on an

appeal is derivative. If the trial court has no jurisdiction, the appellate courts cannot

acquire jurisdiction by appeal.”).

 The majority opinion relies on the allegations in Plaintiff’s Complaint as the

sole evidence that the Notice of Complaint was timely filed with the Board. The

 19
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

majority opinion’s view is that Plaintiff’s allegation in Plaintiff’s Complaint that

Plaintiff filed the Notice of Complaint on 25 October 2012 was self-proving, and no

additional record evidence is required. I disagree with the majority opinion’s position

that Plaintiff’s mere allegation that it had timely filed the Notice of Complaint can

suffice to meet Plaintiff’s burden of proving jurisdiction. Further, Mr. Forest’s

signature on the Notice of Complaint was notarized on 26 October 2012. Plaintiff’s

allegation that the Notice of Complaint was filed on 25 October 2012, a day before it

was signed by Mr. Forest, cannot be correct and, therefore, should not be relied on to

prove a jurisdictional requirement.

 Rule 9 of our Rules of Appellate Procedure requires all record copies of filed

documents to include the file stamp so that this Court can verify the date of filing.

N.C. R. App. P. 9(b)(3). Failure to include a properly executed and filed

jurisdictionally required document in the record generally results in dismissal of an

appeal. See Crowell Constructors, Inc. v. State ex rel. Cobey, 328 N.C. 563, 563–64,

402 S.E.2d 407, 408 (1991); McKinney v. Duncan, __ N.C. App. __, __, 808 S.E.2d 509,

512 (2017) (“The order is devoid of any stamp-file or other marking necessary to

indicate a filing date, and therefore it was not entered. See Huebner v. Triangle

Research Collaborative, 193 N.C. App. 420, 422, 667 S.E.2d 309, 310 (2008) (asserting

that a filing date is to be determined by the date indicated on the file-stamp); see also

Watson, 211 N.C. App. at 373, 712 S.E.2d at 157 (standing for the proposition that a

 20
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

signed and dated order is insufficient to be considered filed).”);10 State v. High, 230

N.C. App. 330, 335–37, 750 S.E.2d 9, 13–14 (2013); State v. Moore, 148 N.C. App. 568,

571, 559 S.E.2d 565, 567 (2001). I agree with the majority opinion that including a

file-stamped copy of the Notice of Complaint was not the only manner in which

Plaintiff could have proven the Notice of Complaint was timely filed. For instance,

an affidavit from the Board averring timely filing would likely have served as an

adequate substitute. However, I cannot find any law of this State advocating that

Plaintiff’s own allegations can serve to meet Plaintiff’s burden to demonstrate that

the trial court had jurisdiction, and I do not believe that is the law of this State.

 Absent evidence of compliance with the N.C.G.S. § 163-278.39A(f)(1) Notice of

Complaint filing requirement, the record fails to establish that the trial court

obtained subject matter jurisdiction. See Hargett v. Holland, 337 N.C. 651, 654–55,

447 S.E.2d 784, 787 (1994) (citations and quotation marks omitted) (“A statute of

repose creates an additional element of the claim itself which must be satisfied in

order for the claim to be maintained.”). Absent proof of jurisdiction at the trial court

 10 I also disagree with the majority opinion’s statement that “the lack of a file stamp does not
bear on our appellate jurisdiction” and, therefore, these opinions are “inapposite.” If, as I believe based
on the evidence in this case, the absence of a file-stamped copy of the Notice of Complaint in the record
deprived the trial court of jurisdiction, it necessarily deprives this Court of jurisdiction as well, as our
jurisdiction is derivative. Shepard v. Leonard, 223 N.C. 110, 112, 25 S.E.2d 445, 447 (1943) (“Our
jurisdiction is derivative. If the Superior Court judge who signed the order was without jurisdiction
we have none and it has been the consistent policy of this Court, in the absence of motion, to dismiss
ex mero motu so soon as a defect in jurisdiction is made to appear.”).

 21
 COMMITTEE TO ELECT DAN FOREST V. EMPAC

 McGEE, C.J., dissenting

level, this Court is without jurisdiction to consider Plaintiff’s appeal. Earley, 24 N.C.

App. at 389, 210 S.E.2d at 543. I would also dismiss Plaintiff’s appeal for this reason.

 III. Conclusion

 This appeal should be dismissed for lack of subject matter jurisdiction. First,

I believe it is ultimately our Supreme Court that determines what elements are

constitutionally required in order to confer standing and, in the present case, our

constitution requires more than a bare allegation of a statutory violation. Plaintiff

did not allege any injury to itself resulting from the alleged violations of N.C.G.S. §

163-278.39A, and I would hold that Plaintiff lacked standing to bring this action.

Second, by failing to include a file-stamped copy of the Notice of Complaint, or other

sufficient evidence that the Notice of Complaint was timely filed, Plaintiff has failed

in its burden of proving it complied with a jurisdictional condition precedent to the

filing of this action.

 22