FRIENDS OF JOE SAM QUEEN, Plaintiff v. RALPH HISE FOR N.C. SENATE and
N.C. REPUBLICAN EXECUTIVE COMMITTEE, Defendants

No. COA12-455

(Filed 20 November 2012)

## 1. Parties—proper party to bring action—conceded at oral argument

In an action involving the attribution of political advertising, the parties' substantive arguments were heard even though there was a question as to whether the proper party had brought the action where defendants conceded at oral argument that the present suit was properly authorized.

## 2. Elections—Stand by Your Ad—requirements for action

The trial court did not err by granting defendants' motion for summary judgment, or by denying plaintiff's motion for summary judgment, in an action under the Stand by Your Ad law where neither plaintiff nor defendants fully complied with the statute. In order to recover damages under N.C.G.S. § 163-278.39A, plaintiff must prove that he violated none of the statutory disclosure requirements. Different entities or individuals that jointly purchase a message, air time, portions of either, or both, must disclose joint sponsorship under the statute.

Appeal by plaintiff from order and final judgment entered 14 December 2011 by Judge Gary E. Trawick in Superior Court, Haywood County. Heard in the Court of Appeals 10 October 2012.

*Wallace & Nordan, L.L.P. by John R. Wallace and Joseph A. Newsome, for plaintiff-appellant and Frank G. Queen, P.L.L.C. by Frank G. Queen, for plaintiff-appellant.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C. by Thomas A. Farr and Michael D. McKnight, for defendants-appellees.*

STROUD, Judge.

### I. Introduction

This case arises from alleged violations of the "Stand by Your Ad" disclaimers required for political advertisements under N.C. Gen. Stat. § 163-278.39A (2009) which occurred during the 2010 campaign between Senator Ralph Hise and Senator Joe Sam Queen in North

Carolina's 47th senatorial district. As both plaintiff and defendants failed to provide proper disclosures of the joint sponsorship of television advertisements by both the candidate committee and the political party, plaintiff's claim is barred by the statutory *tu quoque* defense. Since no prior case has interpreted N.C. Gen. Stat. § 163-278.39A and given the ambiguity inherent in the statute, as discussed below, it is not surprising that plaintiff and defendants would in good faith come to slightly different understandings of the requirements of the statute, and we do not mean to imply that either plaintiff or defendants intentionally violated N.C. Gen. Stat. § 163-278.39A. We affirm the trial court's order dismissing plaintiff's claim for the reasons below.

## II. Background

Friends of Joe Sam Queen ("plaintiff" or "Queen Committee"), a political committee formed in North Carolina, filed a complaint on 28 January 2011 in Haywood County seeking damages under N.C. Gen. Stat. § 163-278.39A(f) from Ralph Hise for N.C. Senate ("Hise Committee") and the North Carolina Republican Executive Committee, now known as the North Carolina Republican Party ("NCGOP"), also political committees (jointly, "defendants"). Plaintiff alleged that defendants violated disclosure requirements for advertising paid for by NCGOP during the 2010 race for North Carolina Senate.

In 2010, Joe Sam Queen was the Democratic candidate, and incumbent, for North Carolina Senate from the 47th North Carolina Senatorial District. His opponent was now-Senator Ralph Hise, a Republican. Both campaigns received substantial financial support for their media campaigns from their respective party committees, spending several hundred thousand dollars on television advertising over the course of the 2010 election season. Each political party paid for the production of video messages to be used in its candidate's advertising. NCGOP transferred funds to American Media and Advocacy Group ("American Media") for the specific purpose of media buys for the Hise campaign, and American Media held these funds in a separate account designated for Senator Hise until he authorized a media purchase with the funds. The North Carolina Democratic Party ("NCDP"), by contrast, donated money to the Queen campaign to be used to purchase air time through its media company, Envision, and Envision's subcontractor, Buying Time, Inc. Each contribution by the NCDP to the Queen Committee was transferred to the committee's account for a brief period of time, and held there normally no longer than several hours—once only eleven minutes—before being transferred to Buying Time. Both Senators Hise

and Queen authorized all expenditures to purchase the air time.[1] Substantively, the only difference in the actions of the plaintiff and the defendants is that the Democratic Party ran the contributed funds briefly though the candidate's campaign account before they were used for a media buy, while the Republican Party sent the funds directly to the media company to be held "in escrow" for the candidate to be disbursed for a media buy only at the candidate's direction. Both candidates listed the candidate or campaign committee as the "sponsor" of the advertising in the required on-air disclosure statements and neither listed a political party as a "sponsor." Neither candidate committee had sufficient funds, but for the contributions of the respective political parties, to pay for their television advertising campaigns.[2]

Plaintiff filed its complaint on 28 January 2011, alleging that defendants violated the disclosure rules for political television advertising under N.C. Gen. Stat. § 163-278.39A. Specifically, plaintiff alleged that because the NCGOP paid American Media directly, as opposed to through the Hise campaign, it should have been disclosed as the sole "sponsor" of the Hise advertisements. Plaintiff further alleged that Ralph Hise for N.C. Senate was complicit in these violations and, therefore, also liable under § 163-278.39A(f). Plaintiff also claimed that its campaign advertising had complied fully with N.C. Gen. Stat. § 163-278.39A, as it must in order to bring this claim.

After defendants answered the complaint, denying that the alleged acts constituted violations and raising various defenses, the parties submitted affidavits, took depositions, and filed cross-motions for summary judgment. Defendants also asserted a statutory *tu quoque* ("you too") defense under § 163-278.39A(f) analogous to the equitable defense of unclean hands, claiming that plaintiff engaged in equivalent conduct, so that if defendant's actions were in violation of the statute, the plaintiff's actions were also in violation, as they were substantively the same. Defendants further claimed that even if they were liable under the statute, § 163-278.39A violates their rights under the First and Fourteenth Amendments to the United States Constitution, as well the parallel provisions of the North Carolina Constitution.

---

1. N.C. Gen. Stat. § 163-278.17 (2009) provides in part that "each media shall require written authority for each expenditure from each candidate, treasurer or individual making or authorizing an expenditure." There is no dispute that both Senators Hise and Queen properly authorized the media expenditures at issue in this case.

2. The NCDP contributions paid for approximately 91% of the Queen Committee advertising, and the NCGOP contributions paid for approximately 84% of the Hise Committee advertising.

The trial court granted defendants' motion for summary judgment and denied plaintiff's motion for summary judgment by an order entered 14 December 2011, thus dismissing the plaintiff's claims. Plaintiff timely filed notice of appeal from both rulings in that order on 22 December 2011.

### III.  Standard of Review

Plaintiff timely appeals from the trial court's final order denying its motion for summary judgment and granting defendant's motion for summary judgment.

> "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

*In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted). In our review of the trial court's judgment, "we view the evidence in the light most favorable to the nonmoving party." *Beeson v. Palombo*, ___ N.C. App. ___, ___, 727 S.E.2d 343, 346-47 (2012) (citation and quotation marks omitted).

### IV.  Cause of Action Under § 163-278.39A(f)

[1] This case, which turns on the interpretation of the "Stand by Your Ad" law enacted in 1999, is one of first impression in this Court. N.C. Session Laws 1999-453. Although neither party raises this issue, we must address the preliminary matter of whether the proper plaintiff has brought this action. N.C. Gen. Stat. § 163-278.39A(f) provides that "a *candidate* for an elective office who complied with the television and radio disclosure requirements throughout that candidate's entire campaign shall have a monetary remedy in a civil action against" an opponent-candidate, candidate committee, political party organization, or other sponsor of political advertisements who violates the disclosure provisions of § 163-278.39A. N.C. Gen. Stat. § 163-278.39A(f) (emphasis added). The statute further provides that "[t]he plaintiff candidate may bring the civil action personally or authorize his or her candidate campaign committee to bring the civil action." N.C. Gen. Stat. § 163-278.39A(f)(2)

Some explanation of the structure of Article 22A may be helpful in our discussion of the issues raised by this case. The statutory definitions of several words are important in this case. Article 22A, entitled "Regulating Contributions and Expenditures in Political Campaigns," includes in N.C. Gen. Stat. § 163-278.6 (2009) a set of

general definitions for terms used for most of Article 22A, while N.C. Gen. Stat. § 163-278.38Z (2009) includes additional definitions which are applicable only to Part 1A, entitled "Disclosure Requirements for Media Advertisements." Plaintiff's claim is brought under a provision of Part 1A, specifically N.C. Gen. Stat. § 163-278.39A(f). The terms "candidate," "candidate campaign committee," and "political action committee" have definitions which are applicable only to Part 1A and are different from the definitions of the same words in N.C. Gen. Stat. § 163-278.6. *See* N.C. Gen. Stat. § 163-278.6(4),(14); N.C. Gen. Stat. § 163-278.38Z(2), (3), (5). We will use the definitions which are specific to Part 1A for these terms and will use the general definitions set forth in N.C. Gen. Stat. § 163-278.6 for the other relevant defined terms.

For purposes of Part 1A, a "candidate" is an individual who has filed the requisite notice of candidacy or has otherwise been certified as such. N.C. Gen. Stat. § 163-278.38Z(2). A "candidate campaign committee" is "any political committee organized by or under the direction of a candidate." N.C. Gen. Stat. § 163-278.38Z(3). As noted above, these two terms are defined separately in Part 1A of Article 22A and are used as separate terms in subsection (f). N.C. Gen. Stat. §§ 163-278.38Z, 163-278.39A(f) (stating that the *plaintiff-candidate* has a cause of action against "an opposing *candidate or candidate committee*" (emphasis added)). The statute identifies the *candidate* as the injured party by vesting the individual candidate with the right to bring a cause of action. N.C. Gen. Stat. § 163-278.39A(f) (stating that "a *candidate* for an elective office . . . shall have a monetary remedy in a civil action) (emphasis added)). Thus, the statute clearly provides the right to bring such an action only to an individual candidate or to that candidate's candidate campaign committee where the candidate has specifically authorized the committee to bring the action. *See* N.C. Gen. Stat. § 163-278.39A(f)(2).[3]

Here, although there is no allegation of explicit and direct authorization of this lawsuit in the complaint and no written authorization in the record on appeal, defendants conceded at oral argument that the present suit was properly authorized by Senator Queen. While in another case this absence could be fatal to the plaintiffs claim, as the

---

3. It is worth noting that our Supreme Court has observed, in a different context, that a candidate committee "is the creature of the candidate . . . [and] is, in effect, the alter ego of the candidate." *In re Wright*, 313 N.C. 495, 497, 329 S.E.2d 668, 669 (1985). But this particular statute consistently differentiates between the candidate and the candidate committee. Perhaps N.C. Gen. Stat. § 163-278.39A(f) could be considered the "Stand by your Lawsuit" provision of the "Stand by your Ad" law.

parties agree that Senator Queen authorized his committee to pursue this action, we will consider the parties' substantive arguments.

### V. Interpretation of N.C. Gen. Stat. §§ 163-278.38Z, *et seq.*

**[2]** This statute, known as the "Stand by Your Ad" law, was enacted in 1999. *N.C. Session Laws* 1999-453; N.C. Gen. Stat. §§ 163-278.38Z, *et seq.* (2009). N.C. Gen. Stat. § 163-278.39A(f) gives "a candidate for an elective office" a cause of action against "an opposing candidate or candidate committee" or "any political party organization, political action committee, individual, or other sponsor" whose advertisement for "that elective office" violates the § 163-278.39A disclosure requirements for television and radio advertising. Plaintiff's only claim against defendants arises from this provision of the statute. In order to recover damages under this statute, plaintiff must prove that (1) his opponent or his opponent's candidate committee violated the disclosure requirements of § 163-278.39A, and (2) he violated none of those disclosure requirements. N.C. Gen. Stat. § 163-278.39A(f).[4]

### A. Statutory Ambiguity in § 163-278.39A

Plaintiff contends that the trial court erred in denying its motion for summary judgment, and granting defendant's, because it presented undisputed evidence which indicates that defendant NCGOP paid for television advertisements that did not bear the appropriate disclosures required under N.C. Gen. Stat. § 163-278.39A and that therefore it is entitled to recover damages under N.C. Gen. Stat. § 163-278.39A(f) in the amount of three times the money spent on the improper advertising.[5] In its complaint, plaintiff alleged that defendants violated the disclosure requirements of § 163-278.39A because they aired television ads indicating that they were sponsored by Ralph Hise for NC Senate when the NCGOP had provided the funds to pay for the air time directly to the media buyer, rather than first providing the funds to the Hise Committee so that the Hise Committee could pay for the air time. Plaintiff contends that the NCGOP should have been identified as the "sponsor" of the advertisements or at least as a joint sponsor of the advertisements, along with the Hise Committee. Under the facts presented in this case,

---

4. The plaintiff must also file the necessary notices under § 163-278.39A(f) to preserve the right to bring the action. There is no dispute that Senator Queen did so here.

5. A plaintiff-candidate under this statute is entitled to treble damages if after notifying the opponent that his advertisement is improper, the opponent continues to run the advertisement. N.C. Gen. Stat. § 163-278.39A(f)(2). Plaintiff here sent such a notice.

Plaintiff's claim depends on what it means to be a "sponsor" of an "advertisement." Therefore, our review must begin with an interpretation of that statute. *See State ex rel. Thornburg v. Lot and Bldgs. at 800 Waughtown St.*, 107 N.C. App. 559, 562, 421 S.E.2d 374, 376, *disc. review denied*, 333 N.C. 170, 424 S.E.2d 915 (1992).

The "Stand by Your Ad" statute requires the following disclosures:

(1) Candidate advertisements on television—Television advertisements *purchased by a candidate or candidate campaign committee* supporting or opposing the nomination or election of one or more clearly identified candidates shall include a disclosure statement spoken by the candidate and containing at least the following words: 'I am (or 'This is ___') [name of candidate], candidate for [name of office], and I (or 'my campaign') *sponsored* this ad.'

(2) Political party advertisements on television—Television advertisements *purchased by a political party organization* supporting or opposing the nomination or election of one or more clearly identified candidates shall include a disclosure statement spoken by the chair, executive director, or treasurer of the political party organization and containing at least the following words: "The [name of political party organization] sponsored this ad opposing/supporting [name of candidate] for [name of office]." The disclosed name of the political party organization shall include the name of the political party as it appears on the ballot.

N.C. Gen. Stat. § 163-278.39A(b) (emphasis added). Similar provisions apply to political action committees, § 163-278.39A(b)(3), private individuals, § 163-278.39A(b)(4), and any other "sponsor", § 163-278.39A(b)(5). Thus, whoever "purchased" the advertisement, i.e. the "sponsor", must include a disclosure statement so indicating. The statute does not define what it means to purchase an advertisement and only defines "sponsor" as an entity or individual "that purchases an advertisement." N.C. Gen. Stat. § 163-278.38Z(10). An advertisement is defined as "any *message appearing* in the print media, on television, or on radio that constitutes a *contribution* or *expenditure* under this Article." N.C. Gen. Stat. § 163-278.38Z(1) (emphasis added).

Plaintiff claims that the "purchaser" or "sponsor" of an advertisement is anyone who furnishes money directly to a media buyer for air time, while payment for the production of the message which is aired is "not relevant." Plaintiff argues that NCGOP "purchased" both the

production of the Hise Committee message and the air time for its broadcast, so it was the sole "sponsor," or at least a joint sponsor, by its participation in the air time purchase. Defendants first counter that the purchaser or "sponsor" of an advertisement should be defined as the individual or entity which has ultimate editorial control over the advertisement—the message itself. Defendants next contend that Senator Hise did actually "purchase" the air time for the advertisements, as he had control over the funds in the American Media escrow account and he authorized and directed each expenditure of these funds for air time. Defendants also argue that

> [e]ven assuming that the NCGOP "purchased" TV airtime by sending funds directly to American Media as Plaintiff contends, nothing in N.C.G.S. § 163-278.39A or Chapter 163 defines the "purchaser" of an advertisement as the person or entity who purchases only the air time for the ad. Unlike the term "purchase," the statute defines "advertisement" as "any message appearing in the print media, on television, or on radio that constitutes a contribution or expenditure under this Article." N.C.G.S. § 163-278.38Z(10). Thus, a television "advertisement" requires at least two things: (1) a message and (2) air time on which to broadcast that message.

Although defendants' brief does not concede that they committed any violation of the disclosure requirements, they argue that if they did violate the statute, plaintiff did also, as the air time for plaintiff's advertisements was purchased with funds contributed by the NCDP which were deposited into Senator Queen's campaign account before being almost immediately disbursed for each purchase of air time.

"The cardinal principle of statutory interpretation is to ensure that legislative intent is accomplished. To determine legislative intent, we first look to the language of the statute." *Insulation Systems, Inc. v. Fisher*, 197 N.C. App. 386, 389-90, 678 S.E.2d 357, 360 (2009) (quotation marks and citations omitted), *disc. rev. denied*, 363 N.C. 654, 684 S.E.2d 890. "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and" we need not look further. *In re Hamilton*, ___ N.C. App. ___, ___, 725 S.E.2d 393, 396 (2012) (quotation marks and citation omitted). Indeed, "when confronted with a clear and unambiguous statute, courts are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Id.* If, however, "the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to defeat or impair the object of the statute if that can reasonably be done without doing vio-

lence to the legislative language." *Dayton v. Dayton*, ___ N.C. App. ___, ___, 725 S.E.2d 439, 442 (2012) (quotation marks, citation, brackets, and ellipses omitted).

As noted above, a "sponsor" of an "advertisement" is the entity or individual "that purchases an advertisement." Although the statute does not define "purchase, the normal dictionary definition is clear. *See* Black's Law Dictionary 1354 (9th ed. 2009) (defining purchase as "[t]he act or an instance of buying."). But the phrase "purchase," an advertisement" is ambiguous, given the definition of "advertisement." N.C. Gen. Stat. § 163-278.38Z(1) defines an "advertisement" as: "any message appearing in the print media, on television, or on radio that constitutes a contribution or expenditure under this Article." N.C. Gen. Stat. § 163-278.38Z(1). Thus, a television advertisement consists of two parts—the message and its appearance on television, or the "air time". Looking at the definition of "advertisement" grammatically, the term "message" is modified by two phrases: "that constitutes a contribution or an expenditure under this Article" and "appearing in print media, on television or on radio."[6]

Where the same person or entity "purchases" both the production of the message and the air time to broadcast the message, there is no ambiguity in the identity of the "sponsor" of the advertisement. Here, the problem is that the political parties—both NCDP and NCGOP—paid for the production of the messages and then contributed funds to pay for the air time in slightly different ways; both of the political parties and the candidate committees jointly participated in the purchases of the advertisements.

The issue is then whether a "sponsor" is the one who purchases the message (i.e., production of the actual recording, video, etc.), the air time, or both. Given three possible interpretations, we must conclude that this provision of the statute is ambiguous, especially considering the uniquely powerful remedy against those who violate these provisions.[7]

---

6. N.C. Gen. Stat. § 163-278.6(9) defines the term "expend" or "expenditure" as "any *purchase*, advance, conveyance, deposit, distribution, transfer of funds, loan, payment, gift, pledge or subscription of money or anything of value whatsoever, whether or not made in an election year, and any contract, agreement, or other obligation to make an expenditure, to support or oppose the nomination, election, or passage of one or more clearly identified candidates, or ballot measure." N.C. Gen. Stat. § 163-278.6(9) (emphasis added).

7. The enforcement mechanism chosen by our legislature is unique in the world of election law. Many other jurisdictions have analogous disclosure laws. *See, e.g.,* 2

## B. Defining "sponsor"

"[W]hen the meaning of a statute is in doubt, reference may be made to the title and context of an act to determine the legislative purpose." *Preston v. Thompson*, 53 N.C. App. 290, 292, 280 S.E.2d 780, 782 (1981), *disc. rev. denied*, 304 N.C. 392, 285 S.E.2d 833. This act is entitled "Stand by your Ad." N.C. Session Laws 1999-453. As the title makes clear, the primary purpose of this act is to let the public know who is responsible for the content of the advertisement and to further the State's interest in "informing voters who or what entity is trying to persuade them to vote in a certain way." *Alaska Right to Life Committee v. Miles*, 441 F.3d 776, 793 (9th Cir. 2006); *see KVUE, Inc.*

---

U.S.C. § 441d (2006) (setting out federal disclosure requirements for political advertisements), Md. Code Ann., Elec. Law § 13-401 (West 2010) (requiring an authority line on campaign material), Va. Code Ann. § 24.2-957.1 (2011) (requiring on-air disclosures for political television advertisements). However, after diligent searching, it appears that North Carolina has the only statute that provides candidates with a private cause of action against their opponents for advertising disclosure violations, rather than enforcement through government-enforced criminal or civil penalties. *See, e.g.*, 2 U.S.C. § 437g(6) (2006) (authorizing the Federal Election Commission to institute civil enforcement actions), Md. Code Ann., Elec. Law §§ 13-602, 13-603, 13-604 (West 2010) (making knowing election law violations, including violation of Maryland's disclosure and disclaimer requirements for campaign materials, misdemeanors prosecutable by the State), Va. Code Ann. § 24.2-955.3 (2011) (establishing civil and criminal penalties, enforceable by the State Board of Elections, to be paid to the state), Fla. Stat. § 106.1439 (2008) (making election law violations misdemeanors), 10 Ill. Comp. Stat. 5/9-23 (2010) (establishing civil penalties for election law violations, enforced by the Attorney General), Tenn. Code Ann. § 2-19-120 (West 2003) (requiring disclosures for political advertisements and making violations criminal), S.C. Code Ann. § 8-13-1520 (2011) (making violations misdemeanors), Cal. Gov't Code § 91000 (West 2012) (establishing criminal penalties for election law violations), Minn. Stat. §§ 211B.16, 211B.19 (2010) (providing for criminal penalties enforced by county attorneys), Iowa Code § 68A.701 (2012) (making violation of campaign finance and disclosure laws a "serious misdemeanor"), Del. Code Ann. tit. 15, § 8043 (2006) (providing for criminal penalties for election law violations), N.H. Rev. Stat. Ann. § 664:21 (2012) (establishing civil and criminal penalties to be pursued by the State for violations of election law), *but see* Cal. Elec. Code § 20010 (West 2003) (providing candidates a civil action against those who maliciously misappropriate their image in political advertising). Indeed, the most analogous statutes appear to be those punishing non-criminal fraud of various sorts, or for violation of telemarketing disclosure rules. *See, e.g.*, N.C. Gen. Stat. § 58-2-161 (2011) (providing cause of action, including treble damages, for false statements regarding insurance claims), N.C. Gen. Stat. § 75-16 (2011) (providing cause of action, including treble damages, for those injured by the breakup of a monopoly), N.H. Rev. Stat. Ann. § 664:14-a (establishing a civil action for those injured by political "robocalls", including treble damages for willful violations); *see also* 47 U.S.C. § 227(d), (g) (2006) (requiring disclosure statement at the beginning of "robo-calls" and authorizing civil enforcement action against violators, including treble damages), *and Maryland v. Universal Electronics*, ___ F.Supp.2d ___, ___, 2012 WL 1940543 (discussing civil enforcement action by Maryland against company who made robo-calls without the required disclosure).

*v. Moore,* 709 F.2d 922, 933 (5th Cir. 1983) (noting that similar Federal Election Commission rules "are designed to reveal whether a commercial is authorized by a candidate."); Timothy Moran, Format Restrictions On Televised Political Advertising: Elevating Political Debate Without Suppressing Free Speech, 67 Ind. L. J. 663, 677-78 (1992) (discussing the purpose of political advertising disclosure laws).

As noted above, an advertisement has two parts: the message and its appearance on television. As the production of the message must occur prior to its broadcast, we will first address the "message."

Plaintiff argues that the purchase of the "message," or payment of production costs, is "not relevant" to the determination of "who purchased or sponsored the advertisement." Plaintiff recognizes that an advertisement has two parts, the message and its broadcast but argues that only "the purchase and use of airtime on television . . . under the statute, turns a video into an advertisement." This statement is true, but an advertisement also cannot exist without a message and the message must exist before the "use of airtime" can occur. We believe that ignoring the fact that the "message" is an essential part of the "advertisement" would fail to give effect to the statutory language and would undermine the purpose of the statute, which is to inform the public of who is trying to influence them. Air time without a message is white noise; the message is the only portion of an "advertisement" with any substantive content. Failure to identify the entity which paid for the message's production would be contrary to the primary purpose of the "Stand by Your Ad" law.

In further support of its argument that payment for production costs for the message is irrelevant, Plaintiff notes that the statute does not mention "production costs or the other tangential costs affiliated with the making of political advertisements." Yet the definition of "advertisement" itself specifically defines an advertisement in part as "any message . . . that constitutes a contribution or expenditure." N.C. Gen. Stat. § 163-278.38Z(1). For a message to constitute a contribution or expenditure, some transfer of money or thing of value is needed. Art. 22A broadly defines "expenditures," "contributions," and "independent expenditures", all of which include some form of transfer of "money or anything of value" to "support or oppose the nomination [or] election" of a "clearly identified candidate." The payments of expenses for the production of videos which supported or opposed the elections of both Senators Hise and Queen were reported as "in kind contributions" and "coordinated expenditures" under Article 22A by Senators Hise and Queen as well as the NCDP and NCGOP.

Plaintiff also contends that payment for the message production is irrelevant because the statutory damages are calculated based on "the total dollar amount of television and radio advertising time that was aired and that the plaintiff candidate correctly identifies as being in violation of the disclosure requirements of this section." *See* N.C. Gen. Stat. § 163-278.39A(f)(2). But the fact that the General Assembly chose to base the damages just upon "time that was aired" and not upon production costs as well makes sense, as no one is misled by a message or the disclaimer on a message that has not been aired yet—no violation can occur until a message is actually disseminated by airing it.

We hold that payment of production costs for the "message," here the videos, constitutes part of the sponsorship of an "advertisement" under N.C. Gen. Stat. § 163-278.39A(b). Thus, for the "sponsors" to be properly identified, all of the purchasers of both parts of the advertisement must be identified in the disclaimer.

This interpretation best advances the purpose of the statute while avoiding violence to its language. Indeed, it is clear that the legislature contemplated the possibility that an advertisement could have multiple sponsors. In § 163-278.39A(e1), the statute provides fairly detailed instructions on how to properly disclose joint sponsors:

> If an advertisement described in this section is jointly sponsored, the disclosure statement shall name all the sponsors and the disclosing individual shall be one of those sponsors. If a candidate is one of the sponsors, that candidate shall be the disclosing individual, and if more than one candidate is the sponsor, at least one of the candidates shall be the disclosing individual.

N.C. Gen. Stat. § 163-278.39A(e1). Thus, where different entities or individuals jointly purchase the message, the air time, portions of either, or both, they must disclose joint sponsorship under this section.

The facts regarding payment of production costs for both the Hise and Queen Committees television advertisements are undisputed, and were summarized by Plaintiff as follows:

> The NCDP paid Envision Communications directly for the cost of producing these TV ads. Production costs paid by the NCDP were reported by the NCDP on its campaign finance reports as a "coordinated party expenditure." The Queen Committee reported these payments by the NCDP as "in-kind" contributions.

The [Hise Committee] ads were produced by a media company called Innovative Advertising. The NCGOP paid Innovative Advertising directly for the costs of producing these ads. The NCGOP's payments to Innovative Advertising were disclosed on the campaign finance reports of both the NCGOP and the Hise Committee as "in-kind" contributions to the Hise Committee for "media production."

It is undisputed that the NCDP paid for the production of the message, or video, for the Queen Committee advertisements, and that the NCGOP paid for the production of the video of the Hise Committee advertisements. It is also undisputed that the Queen Committee advertisements identified only the Queen Committee as the "sponsor" of the advertisements; NCDP was not identified as a joint sponsor under N.C. Gen. Stat. § 163-278.39A(e1). Thus, Senator Queen is not a "candidate for an elective office who complied with the television and radio disclosure requirements throughout that candidate's entire campaign," and he cannot recover under N.C. Gen. Stat. § 163-278.39A(f) even if defendants also violated the disclosure requirements because of the manner of the transfer of funds to American Media for the air time.

As we have determined that plaintiff is barred from recovery for failure to disclose the joint sponsorship of the Queen advertisements, we need not examine the second portion of the definition of "sponsorship" of an advertisement, the method of payment for the air time. Whether we were to determine that Senator Hise purchased the airtime for his advertisements because he paid for the airtime with funds which were held by American Media, or that NCGOP actually purchased the airtime because the funds were transferred directly to American Media instead of to the Hise Committee campaign account, the result would be the same, since neither NCDP or NCGOP was identified as a "sponsor" of the advertisements based upon their payment of production costs. It is therefore unnecessary for us to address the parties' various arguments regarding the method by which NCGOP and the Hise Committee actually paid for the airtime for the Hise Committee advertisements.

## VI. Conclusion

Plaintiff's only claim against defendants depended on showing that the NCGOP was the "sponsor" of advertisements run in Senator Hise's name and that plaintiff's advertisements included a disclaimer identifying all sponsors in compliance with N.C. Gen. Stat.

§ 163-278.39A. Because we have determined that neither plaintiff nor defendants fully complied with N.C. Gen. Stat. § 163-278.39A, plaintiff's claim is barred by N.C. Gen. Stat. § 163-278.39A(f). Therefore, we need not reach defendants' other statutory or constitutional arguments. As there were no genuine issues of material fact and defendants were entitled to judgment as a matter of law, the trial court did not err in granting defendants' motion for summary judgment or in denying plaintiff's motion for summary judgment.

AFFIRMED.

Judges ELMORE and BEASLEY concur.