McGEE, Chief Judge, dissenting.
Because I believe this Court lacks subject matter jurisdiction over the appeal, I respectfully dissent. This Court lacks jurisdiction to consider Plaintiff's appeal for two reasons: (1) Plaintiff has failed to demonstrate that it had standing to initiate this action, and (2) Plaintiff has failed to prove that it met a condition precedent required for the trial court to obtain subject matter jurisdiction.
I. Standing
Plaintiff failed in its burden of demonstrating that it had standing to bring the present action. Because I believe the necessary elements of *13 standing, as set forth in the appellate opinions of this State, are based on rights and protections guaranteed by the North Carolina Constitution, I do not believe the General Assembly is empowered to confer standing on plaintiffs that have not alleged any actual harm.
The majority opinion repeatedly states its assumption that the trial court based its ruling on a determination that "because Dan Forest won his election ... he did not suffer an injury sufficient in a constitutional sense to confer standing." However, the trial court did not reference the outcome of the election anywhere in its order-it simply stated that "Plaintiff has failed to allege any forecast of damage other than speculative damage." More importantly, the reasoning of the trial court is not relevant to our standing review. My analysis is based solely upon the allegations in Plaintiff's 9 March 2016 Complaint ("Plaintiff's Complaint").
"No person shall be ... in any manner deprived of his ... property, but by the law of the land." N.C. Const. art. I, § 19. "[U]nder the law of the land clause of the State Constitution a judgment of a court cannot bind a person unless he is brought before the court in some way sanctioned by law[.]" Eason v. Spence , 232 N.C. 579, 586, 61 S.E.2d 717, 722 (1950) (citations omitted). "All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law[.]" N.C. Const. art. I, § 18. "As a general matter, the North Carolina Constitution confers standing on those who suffer harm [.]" Willowmere Cmty. Ass'n v. City of Charlotte , 370 N.C. 553, 556, 809 S.E.2d 558, 561 (2018) (quoting art. I, § 18 and Mangum v. Raleigh Bd. of Adjust. , 362 N.C. 640, 642, 669 S.E.2d 279, 281 (2008) ) (emphasis added). Therefore, the North Carolina Constitution does not confer standing on those who have not suffered harm . Id.
In order to establish standing to bring this action based on violations of N.C. Gen. Stat. § 163-278.39A, Plaintiff was required to meet two separate burdens: (1) prove that it was a party authorized to bring the action pursuant to the requirements of the statute itself, see, e.g., Applewood Props., LLC v. New S. Props., LLC , 366 N.C. 518, 522-24, 742 S.E.2d 776, 779-80 (2013), and (2) prove that it met the general constitutional standing requirements as determined by our appellate courts. See, e.g., Carcano v. JBSS, LLC , 200 N.C. App. 162, 175, 684 S.E.2d 41, 52 (2009) ; Coker v. DaimlerChrysler Corp. , 172 N.C. App. 386, 390-91, 617 S.E.2d 306, 310 (2005), aff'd per curiam , 360 N.C. 398, 627 S.E.2d 461 (2006). "Since standing is a jurisdictional requirement, the party seeking to bring [its] claim before the court must include allegations which demonstrate why [it] has standing in the particular case[.]" Cherry v. Wiesner , 245 N.C. App. 339, 346, 781 S.E.2d 871, 877, disc. review denied , *14 369 N.C. 33, 792 S.E.2d 779 (2016) (citations omitted). The allegations in Plaintiff's complaint were sufficient to meet Plaintiff's first burden, but insufficient to meet its second.
North Carolina courts are not constitutionally bound by the standing jurisprudence established by the United States Supreme Court. See, e.g. , Cedar Greene, LLC v. City of Charlotte , 222 N.C. App. 1, 17, 731 S.E.2d 193, 204-05 (2012), rev'd , 366 N.C. 504, 739 S.E.2d 553 (2013) (adopting Court of Appeals dissent in appeal from declaratory action challenging constitutionality of a statute); but see Dunn v. Pate , 334 N.C. 115, 119, 431 S.E.2d 178, 181 (1993) (citation omitted) (Our Supreme Court, in determining the issue of standing in a constitutional challenge to a *747 statute, stated: "The [Court of Appeals] correctly stated that the petitioner 'must allege she has sustained an "injury in fact" as a direct result of the statute to have standing.' "). However, since at least the 1960s, our courts, both trial and appellate, have applied requirements established by the United States Supreme Court to the standing jurisprudence of this State. See, e.g., id. ; River Birch Assocs. v. City of Raleigh , 326 N.C. 100, 129, 388 S.E.2d 538, 555 (1990) ; Stanley v. Dept. Conservation & Development , 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973).
When this Court or our Supreme Court adopts a standard from another jurisdiction and applies that standard in order to decide an issue before it, that standard becomes part of the holding, and part of the law of this State. Therefore, though standing requirements set by the United States Supreme Court are not inherently binding on this Court, they become binding once adopted and applied by our appellate courts in order to decide an issue. Both this Court and our Supreme Court have adopted and applied federal standing requirements for decades, and this Court is bound by those adopted standards as much as it is bound by the common law standards that developed independently in this State.[6]
When discussing the underlying requirements for demonstrating standing in regular civil actions, this Court has repeatedly held that
[t]he irreducible constitutional minimum of standing [is]: (1) "injury in fact"-an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or *15 imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Teague v. Bayer AG , 195 N.C. App. 18, 22, 671 S.E.2d 550, 554 (2009) (citations and quotation marks omitted). Because federal constitutional standards do not dictate standing requirements in North Carolina, the "irreducible constitutional minimum" discussed in Teagu e and other opinions must logically refer to the minimum requirements of the North Carolina Constitution. See N.C. Const. art. I, § 18 ; Willowmere , 370 N.C. at 558, 809 S.E.2d at 561. Our Supreme Court has recognized "injury in fact" as a required element of standing in opinions filed both prior and subsequent to Cedar Greene . See Hart v. State , 368 N.C. 122, 140, 774 S.E.2d 281, 293-94 (2015) ; Empire Power Co. v. N.C. Dept. of E.H.N.R. , 337 N.C. 569, 590, 447 S.E.2d 768, 780-81 (1994).
A recent United States Supreme Court opinion, Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), addressed the issue presently before us-whether standing can be created by statute for plaintiffs that cannot meet the general constitutional standing requirements. In Spokeo, the Court held that the plaintiff's burden to prove injury-in-fact cannot be abolished by statute. Id. at ----, 136 S.Ct. at 1549-50, 194 L.Ed.2d at 646 (citations omitted). The Court held: "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.' " Id. at ----, 136 S.Ct. at 1547-48, 194 L.Ed.2d at 643-44. The injury-in-fact standard applied in Spokeo is the same that this Court applies: " 'To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." ' " Spokeo, --- U.S. at ----, 136 S.Ct. at 1548, 194 L.Ed.2d at 644 (citation omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' " Id. (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.' " Id. "A 'concrete' injury *748 must be 'de facto '; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term-'real,' and not 'abstract.' " Id. at ----, 136 S.Ct. at 1548, 194 L.Ed.2d at 644-45 (citations omitted); compare Teague , 195 N.C. App. at 22, 671 S.E.2d at 554. The "de facto " requirement is also recognized by this Court. See Coker , 172 N.C. App. at 391-92, 617 S.E.2d at 310 (citations omitted) (emphasis removed) (defining "injury in fact" as an injury that is "concrete and particularized and *16 ... actual or imminent, not conjectural or hypothetical[,]" "distinct and palpable" and not "abstract").
In Spokeo , the Court recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact[,]" Spokeo, --- U.S. at ----, 136 S.Ct. at 1549, 194 L.Ed.2d at 646 (emphasis added), but that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at ----, 136 S.Ct. at 1549, 194 L.Ed.2d at 645. The Court held that because the Ninth Circuit failed to consider whether violation of the specific procedures alleged in Robins' complaint constituted a sufficiently concrete harm, remand was required.
On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation [because] violation of ... FCRA's procedural requirements may result in no harm .
Id. at ----, 136 S.Ct. at 1550, 194 L.Ed.2d at 646 (emphasis added). The Court held that the relevant analysis was "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement ." Id. (emphasis added). Stated differently:
[A]n alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a "risk of real harm" to that concrete interest. But even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.
Strubel v. Comenity Bank , 842 F.3d 181, 190 (2d Cir. 2016) (citing and paraphrasing Spokeo ). In the wake of Spokeo , multiple federal jurisdictions have held that minor or technical violations of statutes do not satisfy the injury-in-fact requirement. See, e.g., Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 346 (4th Cir. 2017) ("As Spokeo demonstrated, a statutory violation absent a concrete and adverse effect does not confer standing."); Kleg v. SP Plus Corp ., 2018 WL 1807012 (N.D. Ga. Mar. 5, 2018) (including thorough review of federal district and circuit courts that have found no standing for non-injurious statutory violations).
*17 I believe the North Carolina Constitution requires the same level of particularization and concreteness with regard to statutory violations.[7] See, e.g. , Empire Power , 337 N.C. at 590, 447 S.E.2d at 780-81 (citation omitted) (emphasis added) ("the 'procedural injury' implicit in the failure of an agency to prepare an environmental impact statement was itself a sufficient 'injury in fact ' to support standing as an 'aggrieved party' under former N.C.G.S. § 150A-43, as long as such injury was alleged by a plaintiff having sufficient geographical nexus to the site of the challenged project that he might be expected to suffer whatever environmental consequences the project might have .").
In the present case, Plaintiff argues, and the majority opinion agrees, that allegation of a "bare procedural violation" of N.C.G.S. § 163-278.39A was sufficient to confer standing. Plaintiff contends in its reply brief: "In light of [ N.C.G.S. § 163-278.39A ], the General Assembly has declared that a candidate *749 has been injured when an opposing organization fails to follow advertising disclosure laws. Thus, there is injury in fact [in this case.]" Plaintiff further contends that because the General Assembly created a private cause of action as the enforcement mechanism for N.C.G.S. § 163-278.39A, the General Assembly eliminated the need to show "actual demonstrable damages:" "[W]hen [the General Assembly] created [N.C.G.S.] § 163-278.39A (2011), by modifying the common law requirement that actual damages must be demonstrable, it provided a different way to calculate otherwise incalculable actual damages." To the extent, if any, that Plaintiff is using "damages" to mean "injury," conflating these terms is incorrect. "[T]he term 'wrong' has a legal signification distinct from 'damage,' and is synonymous with 'injuria '-signifying a legal injury-hence the maxim damnum absque injuria , which 'is used to designate damage which is not occasioned by anything which the law esteems an injury.' " Thomason v. R. R. , 142 N.C. 318, 330, 55 S.E. 205, 209-10 (1906) (citations omitted). It was evidence of injury, not damages, that Plaintiff was required to properly plead in order to confer standing.
The General Assembly unquestionably has the authority to supplant common law through legislation. However, I do not agree that this State's standing requirements are susceptible to abrogation through legislative enactments-they are the minimum constitutional requirements a plaintiff must satisfy in order to force a defendant into court . Mangum , 362 N.C. at 642, 669 S.E.2d at 281-82 ; see also N.C. Const. art. I, §§ 18 and 19 ;
*18 N.C. Const. art. IV, § 1 ("The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government[.]"); City of Asheville v. State of N.C. , 369 N.C. 80, 88, 794 S.E.2d 759, 766 (2016) (citations and quotation marks omitted) ("[i]f there is a conflict between a statute and the Constitution, this Court must determine the rights and liabilities or duties of the litigants before it in accordance with the Constitution").
I cannot locate any other enactment by the General Assembly that has created a private right of action conferring standing on a plaintiff without requiring any showing of a particularized and concrete injury proximately caused by an act of the defendant. For example, N.C. Gen. Stat. § 75-16 (2017) of our Unfair and Deceptive Practices Act specifically requires an allegation of injury, and this Court has held that a plaintiff must allege facts in support of both the standing requirements created by the legislation, and the constitutional requirements for standing. Coker , 172 N.C. App. at 391, 401, 617 S.E.2d at 310, 316, aff'd per curiam , 360 N.C. 398, 627 S.E.2d 461.
In Friends of Queen , this Court recognized the peculiarity of the use of a private cause of action as an enforcement mechanism for violations of N.C.G.S. § 163-278.39A :
The enforcement mechanism chosen by our legislature is unique in the world of election law . Many other jurisdictions have analogous disclosure laws. However, after diligent searching, it appears that North Carolina has the only statute that provides candidates with a private cause of action against their opponents for advertising disclosure violations, rather than enforcement through government-enforced criminal or civil penalties .
Friends of Joe Sam Queen v. Ralph Hise for N.C. Senate , 223 N.C. App. 395, 403 n.7, 735 S.E.2d 229, 235 n.7 (twelve citations to statutes from different jurisdictions omitted) (emphasis added). It is this unprecedented use in N.C.G.S. § 163-278.39A of a private cause of action to enforce what was essentially a public right to information that is responsible for the unique standing issue now before us. As suggested by Friends of Queen , 223 N.C. App. at 403 n.7, 735 S.E.2d at 235 n.7, it is the State, not private entities, that has the superior interest in enforcing public rights, and the inherent standing to do so.
I do not agree that N.C.G.S. § 163-278.39A was enacted to create or enforce "a political candidate's right to participate in a campaign where *19 sponsors of political ads supporting his or her opponent must make themselves known to the public in their ads." The majority opinion suggests that N.C.G.S. § 163-278.39A was intended to create a private, *750 rather than public, right. If this were true, it would represent a complete break with the traditional state interests motivating the enactment of disclosure statutes, and would raise concerning constitutional questions. Political disclosure laws have been enacted, and constitutionally justified, as a means to enforce the public's right to access relevant information concerning political candidates. In fact, it is this governmental interest in ensuring an informed electorate that serves to provide constitutional justification for the coincident invasion of First Amendment rights associated with political disclosure statutes:
In this case, the state interest at stake is that of "provid[ing] the electorate with information as to where political campaign money comes from and how it is spent." Buckley , 424 U.S. at 66, 96 S.Ct. 612 (internal quotation marks omitted). This "informational interest" is sufficiently important to support disclosure requirements. In Buckley , the Court recognized that campaign finance disclosure was a critical tool for maintaining transparency in the political marketplace: "In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation." Disclosure requirements advance the public's interest in information by "allow[ing] voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches." By revealing "the sources of a candidate's financial support," disclosure laws "alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitate predictions of future performance in office."
Ctr. for Individual Freedom v. Madigan , 697 F.3d 464, 477-78 (7th Cir. 2012) (citations omitted); see also State v. Wright , 206 N.C. App. 239, 243, 696 S.E.2d 832, 836 (2010) ("the whole purpose of the campaign finance laws is to make the information available to the public at all times for voters' review"). It is at least in question whether the majority opinion's stated interpretation of N.C.G.S. § 163-278.39A -that it created a private right for the political candidates themselves instead of a public right for the electorate-would serve to justify the countervailing First *20 Amendment rights involved. See, generally , Davis v. FEC , 554 U.S. 724, 744, 128 S.Ct. 2759, 171 L.Ed.2d 737, 754-55 (2008). Although N.C.G.S. § 163-278.39A created a private cause of action, that cause of action was created to protect a public , not private, right-the right to insure an informed electorate. Under federal standing jurisprudence, "Congress cannot authorize private plaintiffs to enforce public rights in their own names, absent some showing that the plaintiff has suffered a concrete harm particular to him." Spokeo , --- U.S. at ----, 136 S.Ct. at 1553, 194 L.Ed.2d at 650 (Justice Thomas concurring).[8] I would hold that no less requirement should be applied here.
The majority opinion holds: "It is ... clear that a candidate suffers an 'injury in fact' for a breach, even a technical breach, ... when an ad is run which runs afoul of the Disclosure Statute." Though "intangible" injuries, such as violations of fundamental rights, can confer standing to pursue a statutorily created cause of action, it is only those intangible injuries that meet minimum constitutional requirements that can do so. Spokeo , --- U.S. at ----, 136 S.Ct. at 1549, 194 L.Ed.2d at 646. Neither Plaintiff, nor the majority opinion, indicates which allegations in Plaintiff's complaint meet the minimum requirements set forth in Hart , 368 N.C. at 140, 774 S.E.2d at 293-94, Teague , 195 N.C. App. at 22, 671 S.E.2d at 554, or any other appellate opinion of this State. I can identify no allegation of any harm in Plaintiff's complaint that is "de facto ," or otherwise "real, and not abstract," "conjectural or hypothetical." Coker , 172 N.C. App. at 391-92, 617 S.E.2d at 310. Nor can I identify how the alleged violations constitute a particularized harm that " 'affect[s] [P]laintiff in a personal and individual way.' " Spokeo , --- U.S. at ----, 136 S.Ct. at 1548, 194 L.Ed.2d at 644 (citation omitted).
*751 There is nothing inherently injurious to Plaintiff that flows from Defendant's alleged violations of N.C.G.S. § 163-278.39A. Plaintiff's two allegations are that Defendant failed to include in its television advertisement "an unobscured, full-screen picture containing the disclosing individual, either in photographic form or through the actual appearance of the disclosing individual on camera, ... featured throughout the duration of the disclosure statement[,]" and that the disclosure statement was not "spoken by the chief executive officer or treasurer of the political action committee[.]" Plaintiff's own argument on appeal illustrates the "abstract or conjectural or hypothetical" nature of any potential injury suffered by Plaintiff. Plaintiff states: "It is difficult to prove *21 whether the offending advertisements closed the electoral gap and led to [Plaintiff] being required to hire a legal team to monitor provisional vote counting and prepare for the possibility of a recount." Whether the advertisements were in some general sense effective in "closing the electoral gap" is, of course, irrelevant. In order to make an argument of relevance, Plaintiff would have had to allege that the manner in which the alleged violations of N.C.G.S. § 163-278.39A altered the television advertisement negatively impacted Plaintiff's campaign in some tangible manner, or otherwise resulted in actual injury. However, Plaintiff's complaint failed to allege even this hypothetical injury.
The majority opinion cites Kirby v. Board of Education , 230 N.C. 619, 55 S.E.2d 322 (1949), Hildebrand v. Telegraph Co. , 219 N.C. 402, 14 S.E.2d 252 (1941), and Wolfe v. Montgomery Ward & Co. , 211 N.C. 295, 189 S.E. 772 (1937), for the proposition that violations of N.C.G.S. § 163-278.39A(3) and (6) constituted injury sufficient to confer standing, because "a party has standing to bring suit where a private right has been breached, even where the party has not suffered actual damages beyond the fact that a breach occurred." As argued above, I believe N.C.G.S. § 163-278.39A(3) and (6) created public rights, not any private rights in Plaintiff (or in Mr. Forest). Further, damages and injury are not synonymous, and the well-established common law causes of action at issue in Kirby , Hildebrand , and Wolfe -breach of contract, trespass, and slander-are in no manner similar to violations of the (then) newly created statutory provisions of N.C.G.S. § 163-278.39A. In certain instances, an allegation that a defendant committed a particular tort is itself an allegation of an injury-in-fact. Spokeo , --- U.S. at ----, 136 S.Ct. at 1551, 194 L.Ed.2d at 647 (Justice Thomas concurring) (citations omitted) (" 'Private rights' have traditionally included rights of personal security (including security of reputation), property rights, and contract rights. In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy. Many traditional remedies for private-rights causes of action-such as for trespass, infringement of intellectual property, and unjust enrichment-are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right."). Breach of contract, trespass, and slander also fall into this category, and when a plaintiff proves the tort but fails to prove actual damages , nominal damages are awarded to acknowledge the injury committed. Hildebrand , 219 N.C. at 408, 14 S.E.2d at 257 (emphasis added) ("The fact that the *22 injury may be trivial, though material in determining the amount of the owner's damages, does not affect his constitutional rights or the principle of law involved. He is entitled to be protected as to that which is his without regard to its money value."). This difference between traditional common law private causes of action, and causes of action created by statute, has long been recognized and, unlike breach of contract, trespass, or slander, violations of N.C.G.S. § 163-278.39A(3) and (6) could not have resulted in per se injury to Plaintiff.
The majority opinion cites Addison v. Britt , 83 N.C. App. 418, 350 S.E.2d 158 (1986), involving the federal Truth in Lending Act. Addison was decided long before Spokeo and, as cited above, multiple federal courts have since applied Spokeo to find lack of standing on similar facts. Further, this *752 Court expressly declined to address the issue for which the majority opinion cites Addison :
Whether liability attaches to creditors for technical or minor violations of the Act is subject to some dispute among the various jurisdictions. We need not decide the question of whether "technical" violations of the actionable provisions of section 1638 give rise to creditor liability since, in any event, the particular violation we address here is not technical in nature .
Id. at 420, 350 S.E.2d at 159 (citation omitted) (emphasis added).
I disagree with the majority opinion's contention that footnote 7 of Friends of Queen supports a finding of standing in the present case. This footnote more accurately recognizes the novelty of the private cause of action enforcement mechanism included in N.C.G.S. § 163-278.39A(f), and thereby anticipated the standing issue now before us. Finally, Plaintiff fails to make any argument that "it is likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision." Teague , 195 N.C. App. at 22, 671 S.E.2d at 554. I cannot identify an injury, much less how a monetary award could redress any "injury" resulting from violations of N.C.G.S. § 163-278.39A(3) or (6). Because I would hold that Plaintiff has failed in its burden of proving standing, I would dismiss Plaintiff's appeal. Stanley , 284 N.C. at 28-29, 199 S.E.2d at 650.
II. Condition Precedent
Plaintiff filed the record in this appeal on 2 June 2017. In Plaintiff's Complaint, Plaintiff alleged it had "alerted the State Board of Election[s]
*23 [ (the 'Board') ] of [ ] Defendant's violation" of N.C.G.S. § 163-278.39A(b)(6),[9] and stated that "[t]he filing of the Notice of Complaint on October 25, 2012 has preserved [ ] Plaintiff's right to bring this action[.]" The Notice of Complaint was signed and notarized on 26 October 2012, but it does not include a file stamp or any other method by which this Court can determine when or if it was actually filed with the Board. We allowed amendment of the record on 23 March 2018, but the copy of the Notice of Complaint included therein was identical to the copy already in the record-lacking a file stamp.
N.C. Gen. Stat. § 163-278.39A(f)(1), which created the cause of action, stated:
Any plaintiff candidate in a statewide race in an action under this section shall complete and file a Notice of Complaint Regarding Failure to Disclose on Television or Radio Campaign Advertising with the State Board of Elections after the airing of the advertisement but no later than the first Friday after the Tuesday on which the election occurred ..... The timely filing of this notice preserves the candidate's right to bring an action in superior court any time within 90 days after the election.
Id. (emphasis added); see also Friends of Queen , 223 N.C. App. at 400 n. 4, 735 S.E.2d at 233 n. 4 ("The plaintiff must ... file the necessary notices under § 163-278.39A(f) to preserve the right to bring the action."). The majority opinion agrees that the filing requirement in N.C.G.S. § 163-278.39A(f)(1) constituted a statute of repose, or a jurisdictional condition precedent to the initiation of the present action.
Our Supreme Court has discussed the difference between statutes of limitations-enforcement of which may be waived-and statutes of repose-which are unwaivable conditions precedent to the right to initiate an action:
Generally, a statute of limitations has been recognized as a procedural bar to a plaintiff's action, which "does not begin to run until after the cause of action has accrued and the plaintiff has a right to maintain a suit." It also has been long recognized that certain time limitations may operate, not as procedural bars after an action has accrued, but as conditions precedent to the action itself.
*24 Bolick v. American Barmag Corp. , 306 N.C. 364, 368-69, 293 S.E.2d 415, 419 (1982) (citations omitted). Therefore, "the commencement of the action within the time [the statute] fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of *753 the right so created, and the limitation of the remedy is a limitation of the right." Id. (citation and quotation marks omitted).
Compliance with the "Notice of Complaint" filing requirement was jurisdictional and unwaivable, and non-compliance would have served to prevent the trial court from exercising jurisdiction. In re T.R.P. , 360 N.C. 588, 590-91, 636 S.E.2d 787, 790 (2006). Absent subject matter jurisdiction at the trial court level, this Court is without jurisdiction to consider the matter on appeal. State v. Earley , 24 N.C. App. 387, 389, 210 S.E.2d 541, 543 (1975) ("[T]he jurisdiction of the appellate courts on an appeal is derivative. If the trial court has no jurisdiction, the appellate courts cannot acquire jurisdiction by appeal.").
The majority opinion relies on the allegations in Plaintiff's Complaint as the sole evidence that the Notice of Complaint was timely filed with the Board. The majority opinion's view is that Plaintiff's allegation in Plaintiff's Complaint that Plaintiff filed the Notice of Complaint on 25 October 2012 was self-proving, and no additional record evidence is required. I disagree with the majority opinion's position that Plaintiff's mere allegation that it had timely filed the Notice of Complaint can suffice to meet Plaintiff's burden of proving jurisdiction. Further, Mr. Forest's signature on the Notice of Complaint was notarized on 26 October 2012. Plaintiff's allegation that the Notice of Complaint was filed on 25 October 2012, a day before it was signed by Mr. Forest, cannot be correct and, therefore, should not be relied on to prove a jurisdictional requirement.
Rule 9 of our Rules of Appellate Procedure requires all record copies of filed documents to include the file stamp so that this Court can verify the date of filing. N.C. R. App. P. 9(b)(3). Failure to include a properly executed and filed jurisdictionally required document in the record generally results in dismissal of an appeal. See Crowell Constructors, Inc. v. State ex rel. Cobey , 328 N.C. 563, 563-64, 402 S.E.2d 407, 408 (1991) ; McKinney v. Duncan , --- N.C. App. ----, ----, 808 S.E.2d 509, 512 (2017) ("The order is devoid of any stamp-file or other marking necessary to indicate a filing date, and therefore it was not entered. See Huebner v. Triangle Research Collaborative , 193 N.C. App. 420, 422, 667 S.E.2d 309, 310 (2008) (asserting that a filing date is to be determined by the date indicated on the file-stamp); see also Watson , 211 N.C. App. at 373, 712 S.E.2d at 157 (standing for the proposition that a signed and dated order *25 is insufficient to be considered filed).");[10] State v. High , 230 N.C. App. 330, 335-37, 750 S.E.2d 9, 13-14 (2013) ; State v. Moore , 148 N.C. App. 568, 571, 559 S.E.2d 565, 567 (2001). I agree with the majority opinion that including a file-stamped copy of the Notice of Complaint was not the only manner in which Plaintiff could have proven the Notice of Complaint was timely filed. For instance, an affidavit from the Board averring timely filing would likely have served as an adequate substitute. However, I cannot find any law of this State advocating that Plaintiff's own allegations can serve to meet Plaintiff's burden to demonstrate that the trial court had jurisdiction, and I do not believe that is the law of this State.
Absent evidence of compliance with the N.C.G.S. § 163-278.39A(f)(1) Notice of Complaint filing requirement, the record fails to establish that the trial court obtained subject matter jurisdiction. See Hargett v. Holland , 337 N.C. 651, 654-55, 447 S.E.2d 784, 787 (1994) (citations and quotation marks omitted) ("A statute of repose creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained."). Absent proof of jurisdiction at the trial court level, this Court is without *754 jurisdiction to consider Plaintiff's appeal. Earley , 24 N.C. App. at 389, 210 S.E.2d at 543. I would also dismiss Plaintiff's appeal for this reason.
III. Conclusion
This appeal should be dismissed for lack of subject matter jurisdiction. First, I believe it is ultimately our Supreme Court that determines what elements are constitutionally required in order to confer standing and, in the present case, our constitution requires more than a bare allegation of a statutory violation. Plaintiff did not allege any injury to itself resulting from the alleged violations of N.C.G.S. § 163-278.39A, and I would hold that Plaintiff lacked standing to bring this action. Second, by failing to include a file-stamped copy of the Notice of Complaint, or other sufficient evidence that the Notice of Complaint was timely filed, Plaintiff has failed in its burden of proving it complied with a jurisdictional condition precedent to the filing of this action.

I refer only to standards found in opinions with precedential value, and to those standards that constitute holdings in that the application of the standard was "necessary to the decision." See Trustees of Rowan Tech. v. Hammond Assoc. , 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) (citations omitted) (distinguishing holdings from obiter dictum by stating: "Language in an opinion not necessary to the decision is obiter dictum and later decisions are not bound thereby.").

In contrast, the majority opinion holds that "even a technical breach" of N.C.G.S. § 163-278.39A constitutes a per se injury in fact.

For an in depth review of the differing standing requirements attached to "private" and "public" rights, see Spokeo , --- U.S. at ----, 136 S.Ct. at 1550-54, 194 L.Ed.2d at 647-50.

The Notice of Complaint references both N.C.G.S. § 163-278.39A(b)(3) and (6), but only alleges a violation of N.C.G.S. § 163-278.39A(b)(6).

I also disagree with the majority opinion's statement that "the lack of a file stamp does not bear on our appellate jurisdiction" and, therefore, these opinions are "inapposite." If, as I believe based on the evidence in this case, the absence of a file-stamped copy of the Notice of Complaint in the record deprived the trial court of jurisdiction, it necessarily deprives this Court of jurisdiction as well, as our jurisdiction is derivative. Shepard v. Leonard , 223 N.C. 110, 112, 25 S.E.2d 445, 447 (1943) ("Our jurisdiction is derivative. If the Superior Court judge who signed the order was without jurisdiction we have none and it has been the consistent policy of this Court, in the absence of motion, to dismiss ex mero motu so soon as a defect in jurisdiction is made to appear.").